## COUNTY OF CAMERON v. WILL WILSON,
## ATTORNEY GENERAL OF TEXAS

No. A-7101. Decided July 8, 1959.
(326 S.W. 2d Series 162)

*Gibson, Spence & Gibson,* of Austin, and F. T. Graham, of Brownsville for relator.

*Will Wilson.* Attorney General of Texas, *Howard W. Mays*

and *Robert T. Lewis,* Assistants Attorney General, for respondent.

MR. JUSTICE NORVELL delivered the opinion of the Court.

This is an original proceeding in which Cameron County, relator, seeks a writ of mandamus to require Honorable Will Wilson, Attorney General of Texas, respondent, to approve $30,000.00 in revenue bonds which relator proposes to issue pursuant to the provisions of Art. 6079c, Vernon's Ann. Texas Civ. Stat., for the purpose of making additions to existing trailer park facilities in Isla Blanca Park on Padre Island. Respondent has specified three reasons for declining to approve the bonds, namely:

1. Article 6079c is unconstitutional because it is a local and special law and hence prohibited by Article 3, Sec. 56 of the Texas Constitution.

2. Article 6079c does not comprehend the construction of trailer park facilities as an authorized purpose for which revenue bonds may be issued.

3. The operation of trailer park facilities financed by revenue bonds is not "county business."

The authority primarily relied upon as supporting the proposition that Article 6079c is invalid is the decision of this Court in Miller v. El Paso County, 136 Texas 370, 150 S.W. 2d. 1000, opinion by Chief Justice Alexander. In holding invalid a population bracket law which applied only to El Paso County, this Court said:

"Section 56, Article III, of the State Constitution, Vernon's Ann. St., reads, in part, as follows:

" 'Sec. 56. The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law, authorizing:

\* \* \* \* \*

" 'Regulating the affairs of counties, cities, towns, wards or school district;

\* \* \* \* \*

" 'Creating offices, or prescribing the powers and duties of officers, in counties, cities, towns, election or school districts;

\* \* \* \* \*

" 'And in all other cases where a general law can be made applicable, no local or special law shall be enacted; \* \* \*.'

"The purpose of this constitutional inhibition against the enactment of local or special laws is a wholesome one. It is intended to prevent the granting of special privileges and to secure uniformity of law throughout the State as far as possible. It is said that at an early period in many of the states the practice of enacting special and local laws became" an efficient means for the easy enactment of laws for the advancement of personal rather than public interests, and encouraged the reprehensible practice of trading and "logrolling." ' It was for the suppression of such practices that such a provision was adopted in this and many of the other states of the Union. 25 R.C.L., p. 820, Sec. 68.

"Notwithstanding the above constitutional provision, the courts recognize in the Legislature a rather broad power to make classifications for legislative purposes and to enact laws for the regulation thereof, even though such legislation may be applicable only to a particular class or, in fact, affect only the inhabitants of a particular locality; but such legislation must be intended to apply uniformly to all who may come within the classification designated in the Act, and the classification must be broad enough to include a sustantial class and must be based on characteristics legitimately distinguishing such class from others with respect to the public purpose sought to be accomplished by the proposed legislation. In other words, there must be a substantial reason for the classification."

Similarly, in Rodriguez v. Gonzales, 148 Texas 537, 227 S.W. 2d 791, this court, speaking through Chief Justice Hickman, said:

"The primary and ultimate test of whether a law is general or special is whether there is a reasonable basis for the classification made by the law, and whether the law operates equally on all within the class. Bexar County v. Tynan, 128 Texas 223, 97 S.W. 2d 467; Miller v. El Paso County, 136 Texas 370, 150 S.W. 2d 1000; 1 Sutherland (2d Ed.), Statutory Construction, Sec. 203."

Both cases cited were "population bracket" cases which the Court held to be special laws as they applied to one county only. The classification involved in the Rodriguez case is not without interest and affords an illustration of the type of act generally held invalid as a local and special law. We quote from the opinion:

"In order for the provision of the Act to be applicable to a particular suit for delinquent taxes, all of the following conditions must exist, and the absence of any one of them would render it inapplicable: (a) The tract must be in a county bordering on the Rio Grande; (b) must be in excess of 1,000 acres; (c) must be owned by ten or more persons in undivided interests; and (d) title to all or a portion thereof must emanate from a grant from the King of Spain."

The classification to which the Attorney General objects is that contained in Article 6079c, Sec. 1 which is as follows:

"The provisions of this Act are applicable to all eligible counties. An 'Eligibile' County is one which borders on the Gulf of Mexico within whose boundaries is located any island, part of an island, or islands, suitable for park purposes. The suitability of such island, islands, or part of an island for park purposes shall be conclusively established when the Commissioners Court of such County shall have made a finding in an order passed by it that such island, islands, or part of island is or are suitable for park purposes."

A statute under constitutional attack is to be construed as valid if reasonably possible, Duncan v. Gabbler, 147 Texas 229, 215 S.W. 2d 155. It would do violence to obvious intent of the Legislature to construe the Act so as to embrace islands in rivers or fresh water lakes and thus encompass its destruction. Article 6079c, Sec. 2 provided that, "any Eligible County" for the purpose of improving, equipping, maintaining, financing, and operating any such public parks or park owned by such county, may by order passed by the Commissioners Court create a Board to be designated "Board of Park Commissioners, * * *." The words, "such public parks or park" must necessarily refer to island parks situated in the Gulf of Mexico as indicated by Article 6079c, Sec. 1.

In order to come within the provisions of the Act, a County must (1) border on the Gulf of Mexico, (2) embrace within its boundaries an island or part of an island situated in the Gulf, which (3) is suitable for park purposes.

1  The maintenance of public parks on islands in the Gulf of Mexico is undoubtedly a matter of interest to people throughout the State. The Gulf Coast is one of our most popular recreational areas. Each year large numbers of people from all parts of Texas and the United States avail themselves of the opportunities afforded there for fishing, boating and swimming in the ocean. In a number of decisions it has been said that a statute is not local or special within the meaning of the Constitution even though its enforcement or operation is confined to a restricted area, if persons or things throughout the State are affected thereby or if it operates upon a subject in which the people at large are interested. See Lower Colorado River Authority v. McCraw, 125 Texas 268, 83 S.W. 2d 629; Stephenson v. Wood, 119 Texas 564, 34 S.W. 2d 246; Reed v. Rogan, 94 Texas 177, 59 S.W. 255; Atwood v. Willacy County Navigation District, Texas Civ. App., 284 S.W. 2d 275 (wr. ref. n.r.e.); King v. Sheppard, Texas Civ. App., 157 S.W. 2d 682 (wr. ref. w.m.).

2  Where the operation or enforcement of a statute is confined to a restricted area, the question of whether it deals with a matter of general rather than purely local interest is an important consideration in determining its constitutionality. When a statute grants powers to or imposes duties upon a class of counties, the primary and ultimate test is whether there is a reasonable basis for the classification and whether the law operates equally on all within the class.

All counties in Texas are authorized by Arts. 6078 and 6081e, Vernon's Ann. Texas Civ. Stat., to acquire and improve land for use as county parks and to issue tax bonds for such purposes upon a favorable vote of the qualified property taxpayers. The statute now under consideration confers upon the Texas Coastal Counties the additional power to finance improvements of their Gulf island parks by means of revenue bonds. Relator argues that a properly developed Gulf island park is quite different from the ordinary county park in that the former is patronized by many people who do not reside in the county while the latter is used largely by local inhabitants. We recognize that demand for the conveniences usually provided by county parks may be greater along the coast than in many inland areas. It also is reasonable to expect a relatively larger number of nonresidents to be served by a park located near the ocean than by one situated in a section less richly endowed with natural attractions that draw visitors from distant points.

3  The presence or absence of such natural attractions might

well constitute a proper basis for classification in a statute dealing with the financing of county parks. A law which permitted the counties along the coast to issue revenue bonds for the development of their parks would not be invalid because similar authority was not granted to every one of their inland counterparts. In fact, if large number of nonresidents of a particular county make use of its park facilities, it would seem that the sale of revenue bonds as distinguished from tax bonds would be an entirely suitable way to provide and pay for such recreational advantages.

The fact that Article 6079c is applicable only to island parks does not render the Legislative classification unreasonable. The coastal geography of Texas affords a reasonable distinction between the island park on the one hand and the mainland park on the other. Most any map of the State discloses that the greater part of the Gulf Coast is bordered by islands or island-like peninsulas. Most mainland beaches on the Gulf proper occur opposite openings in the island chain, where cities and towns are located, largely because of the existence of these passes into the open sea. Here there is no need for special financial arrangements for the construction of beach facilities. Because of the existence of large populations close by, the development of mainland beaches has naturally taken place. The development of the island beaches is another matter.

Padre Island with which we are here concerned lies within the Counties of Nueces, Kleberg, Kenedy, Willacy and Cameron. It is 110 miles long and contains approximately 135,000 acres of land. The southern tip of the island is not far distant from Brownsville while the northern end is near the city of Corpus Christi. There are no large centers of poulation having access to the island situated near the coast between Brownsville and Corpus Christi. Padre Island is a typical example of the barrier beach. Its wide, clean beaches, composed of fine sand and broken shell which slope gently upward from the sea to the sand dunes near the central portion of the island provide almost ideal conditions for swimming, surf fishing and similar recreations. But of more importance, this is a primitive and wholly undeveloped expanse of beach area, and has remained so largely because of its distance from and inaccessibility to large centers of population. While similar conditions undoubtedly exist as to other island beaches, the same cannot be said of the mainland shore line park. As heretofore pointed out, these mainland beaches, being situated opposite to or in close proximity to the passes to the sea are generally near population centers. Island parks are

different from mainland parks, both as to physical characteristics and degree of development for public use. We cannot say that the classification made by the Legislature, which is based upon this distinction, is unreasonable and hence void.

4 The applicable rule is that "when a law duly enacted is attacked as unconstitutional, the law is presumed to be valid and doubts as to its constitutionality should always be resolved in favor of constitutionality." As pointed out in Duncan v. Gabler, 147 Texas 229, 215 S.W. 2d 155, 158, "This rule has peculiar importance in testing the validity of a state law, for 'the legislative department is not made a special agency for the exercise of specifically defined legislative powers, but is intrusted with general authority to make laws at discretion.' Cooley's Constitutional Limitations, 8th Ed., Vol. 1, p. 175." Before an enactment grounded upon this legislative discretion be nullified as coming within the proscription of Article 3, Sec. 56 of the Constitution, it must clearly appear that there is no reasonable basis for the classification adopted by the Legislature to support the Act. This lack of reasonable basis should be a substantial thing and not something merely apparent but not real. We recognize in the Legislature a broad power to make classifications for legislative purposes. Miller v. El Paso County, 136 Texas 370, 150 S.W. 2d 1000. Because of the breadth and territorial extent of the State, its varied climatic and economic interests, and the attendant problems of transportation, regulation and general needs incident to a growing and active population, we have been and will again be faced with the need and demand for legislation which affects all the people of the State generally, yet which, in its direct operation will apply to one locality or to a comparatively small number of counties. Such legislation is not only common, but is generally for the public good, or at least has been so declared by the legislative branch of government. The scope of such legislation should not be restricted by expanding the nullifying effect of Article 3, Sec. 56 of the Constitution.

In our opinion, the Attorney General's second reason for declining to approve the bonds is not well taken. We are cited to no authorities which hold or indicate that the construction of trailer park facilities is not comprehended by Article 6079c. As above pointed out, a county may establish and maintain a public park. As an incident thereto, it may construct and maintain toilets and sanitary facilities. It may also provide parking space for motor vehicles and electricity for lights, fans and other mechanical appliances. A trailer park is nothing more than a place where parking space, sanitary facilities and electricity are sup-

plied to those who make use of house trailers while traveling about the country for recreational or business purposes. At the present time, Cameron County operates such a park on Padre Island known as Isla Blanca Park and now desires to improve and enlarge the facilities used in connection therewith.

5 Likewise the third objection to the legality of the bond is untenable. As we understand the argument, it does not seriously dispute the premise that a county may establish and operate public parks. The acquiring and maintaining of public parks is a legitimate field of state governmental authority. See, King v. Sheppard, Texas Civ. App., 157 S.W. 2d 682, wr. ref. w.o.m.; Schooler v. State, Texas Civ. App., 175 S.W. 2d 664, wr ref., w.o.m., relating to the Big Bend National Park. Counties are "essentially instrumentalities of the State. They are the means whereby the powers of the State are exerted through a form and agency of local government for the performance of those obligations which the State owes the people at large." Bexar County v. Linden, 110 Texas 339, 220 S.W. 761. Both the constitutional and statutory grants of power to counties are broad and comprehensive. Article 5, Sec. 18 of the Texas Constitution in part provides:

"The County Commissioners so chosen, with the County Judge as presiding officer, shall compose the County Commissioners' Court, which shall exercise such powers and jurisdiction over all county business as is conferred by this Constitution, and the laws of the State, or as may be hereafter prescribed."

It was directly held in Malloy v. Galveston County, Texas Civ. App., 42 S.W. 2d 163 that the acquisition of land for a county park constituted a public purpose under Article 6078, Vernon's Texas Stats. This court refused an application for writ of error. See also, Article 2351, Vernon's Ann. Texas Stats.

A distinction is, however, attempted between public parks financed by the sale of tax supported bonds (Article 6078) and those established through the use of revenue bonds. (Article 6079c). It is stated in the brief that:

"Even though it be conceded that the ownership and operation of a public park by a county, *using tax funds* only, is the exercise of a governmental function, Article 6079c, supra, purports to grant to certain counties the authority to construct and operate a *revenue producing* facility in a county park, producing net revenue for the service of revenue bonds which, being

a proprietary function, is forbidden to a county upon constitutional grounds."

We are unable to follow the suggested distinction. If the maintenance of a park be "county business," it remains so regardless of whether the tax bond method or the revenue bond device is utilized. The distinction between a proprietary and a governmental function while important in determining the tort liability of a city, town or village, is largely beside the point in determining the question now before us.

From what has been said it follows that the writ of mandamus should issue as prayed for. It is accordingly so ordered.

Opinion delivered July 8, 1959.

MR. JUSTICE WALKER joined by JUSTICES CALVERT and SMITH dissenting.

In my opinion Article 6079c is a special law regulating the affairs of counties and therefore unconstitutional under the provisions of Article 3, Section 56, of the Texas Constitution. As pointed out in the majority opinion, all counties in the state are authorized by general statute to issue tax bonds for the acquisition and improvement of land for use as county parks. Article 6079c confers upon not more than fourteen of these political subdivisions the additional power to obtain funds for improving their county parks by issuing revenue bonds. To come within the classification established by the statute a county must: (1) border on the Gulf of Mexico, and (2) have within its boundaries at least part of an island suitable for park purposes. The primary and ultimate test of whether it is a general or special law is whether there is a reasonable basis for this classification, and whether the law operates equally on all within the class. If the classification is not based on a reasonable and substantial difference in kind, situation or circumstance bearing a proper relation to the purpose of the statute, it is a special law. Rodriguez v. Gonzales, 148 Texas 537, 227 S.W. 2d 791.

1.

In upholding the classification made by the statute, the majority state that the words "such public parks or park" in Section 2 necessarily refer to parks located on islands situated in the Gulf of Mexico as indicated by Section 1. The statute does not so provide. In the first place, Section 1 does not require that

the qualifying island be in or even near the Gulf of Mexico. An island in a river or inland lake will suffice if it lies within the boundaries of the county and is found by the Commissioners Court to be suitable for park purposes. In the second place, it is clear that the Legislature intended to authorize an eligible county to exercise the powers granted thereby in the operation and financing of all its county parks and not merely those located on islands.

It should be noted that authority to issue revenue bonds is not the only power conferred upon an eligible county. The statute also provides for the creation and prescribes the powers and duties of a Board of Park Commissioners. As originally enacted in 1949, it dealt only with the latter subject. This earlier law also applied only to a county which bordered on the Gulf of Mexico and had an island suitable for park purposes within its boundaries, but the Legislature did not limit the jurisdiction of the Board to parks located on islands. Section 1 provided that any county which came within the classification might "for the purpose of equipping, maintaining and operating *any*[1] public park or parks owned by said county" confer upon the Board of Park Commissioners authority to equip, maintain and operate such park or parks. The emergency clause recited that "there is great need for such boards to maintain and operate county parks located on islands and *other places located in such counties.*" Acts 1949, 51st Leg., p. 408, ch. 218.

The additional power to issue revenue bonds for the improvement of county parks was conferred upon eligible counties when the statute was amended in 1951. Acts 1951, 52nd Leg., p. 486, ch. 304. Under the terms of the present law it is clear that reenue bonds may be issued for the development of any county park that can be operated by the Board of Park Commissioners. I cannot believe that in adopting the 1951 amendment the Legislature intended that boards which had previously been operating county parks located anywhere in their respective counties should thereafter be concerned only with island parks and have no power to procure the issuance of revenue bonds for the improvement of parks in other locations. Section 2 does speak of "such county parks or park," but substantially the same phrase was used at least six times in the original act and was merely carried over into the amended statute therefrom. Even if this were not so, I would be unwilling to attribute to the Legislature an intention to authorize the creation of a county park board

---

1.—Emphasis throughout this opinion is supplied by the writer.

that was not to have jursidiction over all parks owned and operated by its county unless such limitation on the authority of the board was expressed in clear and unequivocal language.

The caption and emergency clause of the 1951 amendment show, moreover, that it was the purpose and intention of the lawmakers to enlarge rather than restrict the powers of the Board and to permit revenue bonds to be issued for improving any park owned by an eligible county. According to the caption the Legislature was amending the prior statute by "providing for and *increasing* the powers of Park Board" and "providing for the obtaining of funds by Board of Park Commissioners and authorizing them to issue revenue bonds to finance the acquisition of permanent improvements and other facilities connected with or incident to *any* park or parks for any one or more purposes." The emergency clause states that the "legislation is designed to provide an efficient method of financing and operating the facilities of *public parks in eligible counties.*"

In my opinion the legislative intent is clear and the statute authorizes the issuance of revenue bonds for the improvement of any public park owned by an eligible county whether located on an island or elsewhere in the county. Relator conceded in oral argument that if this is its meaning and effect, the law is unconstitutional. The latter conclusion is inescapable, because the problems and needs of one county in the development of interior parks are not different from those of another county simply because the former may border on the Gulf of Mexico and have an island suitable for park purposes within its boundaries. Under the provisions of Art. 6079c Cameron County may issue revenue bonds for developing one of its parks on the Hidalgo County line, while Hidalgo with an adjoining park on its side of the line could not defer the cost of similar improvements except by issuing tax bonds as provided in Art. 6081e. Obviously there is no substantial difference in kind, situation or circumstance of the two counties or their parks that might constitute a reasonable basis for the classification.

2.

My conclusion would not be different if the statute merely authorized an eligible county to issue revenue bonds for improving parks located on islands in the Gulf of Mexico. Large numbers of people are also attracted to the mountains of West Texas, to the large inland lakes, and to other sections of the state. The majority reason that the classification is valid be-

cause the island beaches are undeveloped and have remained so largely because of their distance from and inaccessibility to large centers of population. Assuming for the moment that this difference in situation or circumstance bears a proper relation to the purpose of the statute, a classification based thereon would undoubtedly be reasonable. This is not, however, the line drawn by the present law. The statute does not apply to all counties having natural attractions and ideal park locations that have remained undeveloped because of their distance from and inaccessibility to large centers of population. Instead the little group that may enjoy the special privileges and powers conferred thereby is fixed for all time by the geographical characteristics specified therein. The situation of counties in West Texas and other parts of the state having suitable but remote sites which should be developed as county parks is not substantially different from that of the coastal counties, but the law does not now and cannot hereafter apply to the former no matter how great their need may be. It simply does not operate equally upon all members of the class which possess the characteristics to which the majority point in upholding an entirely different classification.

3.

In the third place, it is my view that the difference in situation or circumstance of the coastal counties with island parks is not so related to the issuance of revenue bonds for park improvements as to constitute a reasonable basis for the classification made by Art. 6079c. The majority seem to be particularly concerned, as I think they should be, over the fact that the law does not even embrace all coastal counties with suitable park sites near the ocean. It is said, however, that island locations have remained undeveloped because of their remoteness from and inaccessibility to large centers of population while mainland beaches are generally near population centers. The question then arises as to the relationship between this difference and the right to obtain funds for park improvements by means of revenue rather than tax bonds. Unless the issuance of revenue bonds is more feasible or appropriate in one situation than the other, the difference does not afford a proper basis for the classification. The majority do not face this question and apparently take it for granted that the classification must be upheld if any difference can be found no matter how irrelevant the same may be to the purpose of the statute.

The revenue bond method of financing is practicable only

when net revenues derived from the operation of the establishment will be sufficient to retire the bonds as they mature. Where the facilities provided and the opportunities for recreation are substantially the same, it is reasonable to suppose that a park located near great centers of population will be patronized by many more people than one situated in an isolated and inaccessible area. On the basis of the differences noted in the majority opinion, therefore, the financing of park improvements by means of revenue bonds is more likely to be feasible for a mainland park than for one located on an island.

Aside from the question of feasibility, a grant of authority to one county to develop its island park by means of revenue bonds when its neighbor is required to issue tax bonds to borrow funds for making the same improvements on a mainland site, can be justified only if the former will probably serve a higher proportion of nonresidents who pay no local taxes. Relator recognizes this when it argues that a properly developed Gulf island park is quite different from an ordinary park in that the former is patronized by many people who do not reside in the county while the latter is used largerly by local inhabitants. It does not, however, suggest any difference in island parks that might cause them to attract a greater number of nonresidents than a mainland park located on the Gulf and near large centers of population.

A coastal county with no suitable island may have a park site on the coast that is even more desirable and attractive to visitors from other counties than an island location in an adjoining county. The numbers of both residents and nonresidents that use the facilities of each will depend upon various circumstances that have no relationship to the difference on which the statutory classification is based. There certainly is no reason to believe that the island park will serve more nonresidents simply because it is situated in a remote and inaccessible area.

As pointed out by McQuillen, the courts have declared time and again that geographical distinctions should not control the classification. McQuillen, The Law of Municipal Corporations, 3rd ed. 1949, Vol. 2, p. 100, Sec. 4.59, note 94 and authorities there cited. In most cases as here geographical characteristics simply are not related in any way to the subject or purpose of the statute. It obviously is not necessary to the successful or useful operation of a public park that it be located on an island. The mere fact that a county borders on the Gulf of Mexico or has a park on an island has no real bearing on the feasibility, pro-

priety or need for financing its development by the issuance of revenue bonds instead of tax bonds, and the powers conferred upon eligible counties will often be equally or even more appropriate to the improvements of parks located in inland counties or on the mainland near the coast. We thus have a grant of special privileges to a select group of counties without any reasonable basis for the classification.

For all the reasons state, I would deny the petition for writ of mandamus.

Opinion delivered July 8, 1959.