

# THE ATTORNEY GENERAL
## OF TEXAS

**AUSTIN, TEXAS 78711**

JOHN L. HILL
ATTORNEY GENERAL

October 3, 1973

The Honorable Joe Resweber
County Attorney
Harris County Courthouse
Houston, Texas 77002

Opinion No. H-119

Re: Validity of Senate Bill 642,
63rd Legislature (Article
1118x, V. T. C. S. )

Dear Mr. Resweber:

You have requested our opinion concerning the constitutionality of
Senate Bill 642 of the 63rd Legislature (Acts 1973, 63rd Leg., ch. 141,
p. 302; Article 1118x, V. T. C. S. ) which generally provides for the creation
of rapid transit authorities possessing the powers, among others, to con-
struct and operate mass transit systems and to levy a "motor vehicle
emission tax" based upon the number of cubic inches of cylinder displace-
ment.

You have suggested, as possible grounds of unconstitutionality, (1)
that the Act is a local bill rather than a general taxing statute and (2) that
the Legislature lacks constitutional authority to create a district having
such taxing powers.

Section 3 of the Act authorizes the "governing body of a principal
city in a metropolitan area" to institute proceedings to create a rapid
transit authority.  A "metropolitan area" is defined in § 2(a) as "any area
within The State of Texas having a population density of not less than 250
persons per square mile and containing not less than 51 per cent of the
incorporated territory comprising a city having a population of not less
than 1, 200, 000 inhabitants according to the last preceding or any future
federal census, and in which there may be situated other incorporated
cities, towns and villages and the suburban areas and environs thereof. "

Section 15 would exclude from this definition any bicounty metropolitan
area - an area comprised of two contiguous counties each having within its
bounds a city of 350, 000 or more inhabitants.

Obviously, the only metropolitan area in Texas presently meeting the definition is the Harris County-Houston area; and it would seem, on initial impression,that the holding of the Supreme Court of Texas in County of Harris v. Shepperd, 291 S. W. 2d 721 (Tex. 1956) would be determinative of the matter. There, a "wheel tax" was declared unconstitutional as a local law. It was contained in a statute, expressly enacted for raising revenue, which commenced with the words: "This local law for the maintenance of public highways for Harris County . . . ."

The "wheel tax" law of the Shepperd case was violative of Article 3, § 56 of the Constitution of Texas, which generally prohibits the enactment of special or local laws where a general law can be made applicable, and Article 8, § 3 of the Constitution which further requires that "Taxes shall be levied and collected by general laws and for public purposes only."

The late Chief Justice Alexander of our Supreme Court, in Miller v. El Paso County, 150 S. W. 2d 1000 (Tex. 1941), said of these two constitutional provisions that their "wholesome" purpose was to prevent the granting of special privileges and to secure uniformity of law throughout the State. He noted that special and local laws earlier had become "an efficient means for the easy enactment of laws for the advancement of personal rather than public interests, and encouraged the reprehensible practice of trading and 'logrolling'."

These thoughts were echoed by Justice Norvell writing for the majority in County of Cameron v. Wilson, 326 S. W. 2d 162 (Tex. 1959).

Nevertheless, the courts have accorded great latitude to the Legislature in determining those to whom an enactment may apply and there are several long recognized means authorized by Texas court decisions, by which bills may be limited in their scope without being classed as special or local laws.

Where a bill is tied to a very narrow range of population determined by an identified census, as, for example, applicable to all cities having a population of between 106, 000 and 110, 000 inhabitants according to the census of 1920, it is generally held to be a local law and invalid. City of Fort Worth v. Bobbitt, 36 S. W. 2d 470 (Tex. 1931). On the other hand, when the same legislation was later made applicable to all cities having a population of more than 100, 000 according to the last preceding census, it was held to be a general law. City of Ft. Worth v. Bobbitt, 41 S. W. 2d 228 (Tex. 1931).

The Honorable Joe Resweber, page 3 (H-119)

However, not every open-ended classification (e. g., all areas having a population in excess of a certain number) is constitutional and not all "brackets" (e. g., all areas with populations between two figures) are unconstitutional. The courts now require a showing that there "is a reasonable basis for the classification and that the law operates equally on all within the classification." Rodriguez v. Gonzales, 227 S. W. 2d 791, 793 (Tex. 1950).

Justice Greenhill (now Chief Justice), writing for the Supreme Court in Smith v. Davis, 426 S. W. 2d 827 (Tex. 1968), stated the rule to be:

> "The Legislature may restrict the application of a law to particular counties by the use of classifications, providing the classifications are not arbitrary. There must be a reasonable relationship between the classification and the objects sought to be accomplished by the statute. Smith v. Decker, 158 Tex. 416, 312 S. W. 2d 632 (1958); Miller v. El Paso County, 136 Tex. 370, 150 S. W. 2d 1000 (1941). As stated in Miller, the classification '. . . must not be a mere arbitrary device resorted to for the purpose of giving what is, in fact, a local law, the appearance of a general law.' The ultimate test for whether a law is general or special is whether there is a reasonable basis for the classification and whether the law operates equally on all members within the class. County of Cameron v. Wilson, 160 Tex. 25, 326 S. W. 2d 162 (1959); Rodriguez v. Gonzales, 148 Tex. 537, 227 S. W.2d 791 (1950)."

See also Bexar County v. Tynan, 97 S. W. 2d 467 (Tex. 1936); Anderson v. Wood, 152 S. W. 2d 1084 (Tex. 1941); Smith v. Decker, 312 S. W. 2d 632 (Tex. 1958).

Another exception to the general rule against special or local laws is that a law may be made applicable to only one area if it is of general import and interest to the people of the State.

Thus, in County of Cameron v. Wilson, supra, it was said:

" . . . In a number of decisions it has been said that a
statute is not local or special within the meaning of the
Constitution even though its enforcement or operation
is confined to a restricted area, if persons or things
throughout the State are affected thereby or if it operates
upon a subject in which the people at large are interested
. . . " (326 S. W. 2d at 165) (Emphasis added)

Cameron County involved public park facilities on Padre Island.
Stephensen v. Wood, 34 S. W. 2d 246 (Tex. 1931), applied the rule to laws
for the preservation of fish in streams and coastal waters. Smith v.
Davis, supra, involved a hospital district and medical school.

In construing the application of these rules to a particular statute
to determine its constitutionality we are admonished by the courts that a
statute is to be construed as valid if reasonably possible. Duncan v.
Gabler, 215 S. W. 2d 155 (Tex. 1948). It is to be presumed that the Legis-
lature did not act unreasonably or arbitrarily in adopting a statutory
classification. The mere fact that reasonable minds might differ as to
the efficacy of an enactment is not sufficient grounds to hold it either
arbitrary or unreasonable. It is for the Legislature and not for us or
the courts to decide the wisdom or expediency of a bill. Smith v. Davis,
supra.

We are not at liberty to substitute our judgment for that of the Legis-
lature if there exists any state of facts justifying a classification such as
that of the "bicounty metropolitan area" of Senate Bill 642. Inman v.
Railroad Commission, 478 S. W. 2d 124 (Tex. Civ. App. , Austin, 1972,
err. ref'd. , n. r. e. ); Reed v. City of Waco, 223 S. W. 2d 247 (Tex. Civ.
App. , Waco, 1949, err. ref'd. )

With these rules in mind, we turn to the provisions of Senate Bill 642.
In our opinion, it is a general law within the meaning of the above-discussed
legal rules and authorities and, on that ground, its constitutionality must
be upheld. Although the Act, by its terms, applies only to the Harris
County-Houston metropolitan area at this time, it is open-ended and may
apply in the future to other areas which can meet the definition of "metro-
politan area". It cannot be said that, as a matter of law, the classification
of areas contained in that definition is either arbitrary or unreasonable.

Surely there is a basis for holding that the problems of air pollution, traffic congestion and mass transportation in such an area differ from those existing in less populous areas.  We cannot say that the line drawn by the Legislature should have been drawn elsewhere.

Furthermore, we are of the opinion that the matter of controlling air pollution and traffic congestion in such a metropolitan area can fairly be said to be a matter of interest and import to people throughout the State.   The Houston metropolitan area to which this Act presently is applicable is one of our most populous and popular areas.   Each year large numbers of people from all parts of Texas and the United States visit the area for various and sundry reasons.   The interdependence of industrial  and commercial centers of the State, and the commerce between them could have fairly have been viewed by the Legislature as affecting the entire State.   Since we believe it is our legal duty to presume that the Legislature understands and correctly appreciates the needs of the people of this State, that its laws are directed to problems made manifest by experience, that its classifications are based on adequate grounds, and that the stated purpose of the Rapid Transit Act (aimed at air pollution, traffic congestion and related problems of general concern) are genuine, we are of the opinion that the statute is not unconstitutional as a special or local law.   As we have said above, this decision is not meant and should not be construed as a commentary on the general merits of the proposition, for that is and should be initially for the Legislature and ultimately for the voters to decide.

What we have said about the population classification of the Act so as to limit its application presently to the Houston area applies equally, we believe, to the classification of bicounty areas to exclude them.   The Legislature reasonably might have found that in an area with two contiguous counties, each having a sizeable city that might be classified as as a "principal" one, the problems of pollution and traffic congestion would be met better by a different  approach than that contemplated by Senate Bill 642.

It is our opinion, therefore, that the statute is a general law and meets the requirements of Article 3, § 56 and Article 8, § 3 of the Constitution.

Turning to the question of the validity of the "emission tax", we are first confronted with the need to determine whether it is, in fact, a tax for revenue purposes or, to the contrary, is primarily a regulatory measure.  The distinction is well stated in Hurt v. Cooper, 110 S. W. 2d 896 (Tex. 1937):

> " . . . The principle of distinction generally recognized is that when, from a consideration of the statute as a whole, the primary purpose of the fees provided therein is the raising of revenue, then such fees are in fact occupation taxes, and this regardless of the name by which they are designated.  On the other hand, if its primary purpose appears to be that of regulation, then the fees levied are license fees and not taxes. [ citing cases] . . . . "  (110 S. W. 2d at 899)

And see Harris County v. Shepperd, supra.

In § 1 of Senate Bill 642, the Legislature recited the findings which called for the enactment of the law.  Summarized, they were (a) the State's population has achieved increased mobility freeing it of county lines; (b) resulting concentrations of population result, in turn, in concentrations of motor vehicles with concomitant air pollution endangering public health and creating hazards; (c) the concentrations of motor vehicles overtax existing streets causing congestion with its attendant ills; (d) the proliferation of the use of motor vehicles results, in part, from the absence of efficient mass transit facilities; and (e) that the "artificial" use of the air, resulting in pollution, is subject to regulation and control by the State.  Section 20, the emergency clause, is framed in much the same tenor.

The Act provides for the levy of a tax which, of necessity, will result in raising revenue to be used to aid in the financing of mass transit facilities.  However, in our opinion one of the prime purposes of the Act is to control and regulate the use of motor vehicles in the affected area with the ultimate goal of reducing pollution of the air and congestion of the streets.  Thus, the "emission tax" serves a dual purpose - partially revenue-raising and partially regulatory - and with its overriding general thrust having substantial regulatory aspects.

It is our opinion, therefore, that the court authorities do not permit us to subject this Act to the most strict limitations imposed by the Constitution on revenue taxes. See Atkins v. State Highway Dept., 201 S. W. 226 (Tex. Civ. App., Austin, 1918, no writ); Payne v. Massey, 196 S. W. 2d 493 (Tex. 1946).

In Atkins v. State Highway Dept., supra, (quoted with apparent approval by the Supreme Court in County of Harris v. Shepperd , supra), the plaintiff challenged the constitutionality of motor vehicle registration fees based upon horse power, invoking various provisions of Article 8 of the Constitution.

In rejecting his contentions, the Court said:

> " . . . Those sections of the Constitution relate to
> ordinary ad valorem taxes, and not to license taxes,
> or fees, such as we have found the fees here involved
> to be. Besides, authorities are numerous to the
> effect that license fees for the operation of automobiles
> may be fixed according to the horse power . . . . "
> (201 S. W. at 232)

Section 17 of Article 8 of the Constitution gives to the Legislature broad powers to determine subjects and objects to be taxed, consistent with other constitutional provisions, so long as such classifications are not unreasonable or arbitrary. See Calvert v. Capital Southwest Corporation, 441 S. W. 2d 247 (Tex. Civ. App., Austin, 1969, err. ref'd., n. r. e. ), appeal dis'm. 397 U. S. 321 (1970). The United States Supreme Court has recently held in dealing with State tax classifications under attack for violation of the Equal Protection Clause, that great leeway is permitted to states in making tax classifications. Lehnhausen v. Lakeshore Auto Parts Co., ____ U. S. ____, 35 L. Ed. 2d 351, 93 S. Ct. 1001 (1973). We are unable to say that the regulatory aspects of Senate Bill 642 applicable to a limited area of the State and in varying amounts dependent upon engine displacement are not consistent with the proper regulation of causes of pollution and aggravated traffic congestion.

Section 13 of the Act authorizes the board to adopt and enforce "reasonable rules and regulations" (a) to maintain safety; (b) governing use of its facilities by the public, including charges to be paid; (c) regulating "privileges" on any of its property; and (d) regulating the collection and payment of emission taxes. It provides, in part:

> "The board may set reasonable penalties for the
> breach of any rule or regulation of the authority which
> shall not exceed fines of more than $200, or imprison-
> ment for more than 30 days or both.   Such penalties shall
> be in addition to any other penalties provided by the laws
> of the state and may be enforced by complaint filed in the
> appropriate court of jurisdiction in the county in which
> the authority's principal office is located. "

The legislative power, and particularly that having to do with the
definition of crimes, is confined by our Constitution to the Legislature.
Article 1, § 28, Article 2, § 1, Article 3, § 1.   The Penal Code, in Article
3, provides that " . . . no person shall be punished for any act or omission,
unless the same is made a penal offense, and a penalty is affixed thereto
by the written law of this State. "   And see § 1. 03(a), Penal Code of 1973,
(Acts 1973, 63rd Leg. , ch. 399, p. 883).

The rule is well stated in 12 Tex. Jur. 2d,   Constitutional Law, § 65,
p. 410:

> "The legislature cannot delegate to an administrative
> agency the power to make a law prescribing a penalty.   But
> the legislature may authorize an administrative agency cre-
> ated for that purpose to prescribe duties or ascertain con-
> ditions on which an existing law may operate in imposing a
> penalty and in effectuating the purpose designed in enacting
> the law. "

In the present Act, no crime is defined and no penal offense is created
by the Legislature.   That power purports to be delegated to the transit
authority along with the power to fix punishments for violations.

Since a transit authority does not have general police powers, as a city
does, we are of the opinion that so much of § 13 as purports to delegate to
transit authorities the power to make violation of its rules and regu-
lations a crime, will be held unenforceable.   Ex parte Lislie, 223 S. W. 227
(Tex. Crim. 1920); Dockery v. State, 247 S. W.  508 (Tex. Crim. 1923); Ex
parte Wilmoth, 67 S. W. 2d 289 (Tex. Crim. 1933); Williams v. State, 176
S. W. 2d 177 (Tex. Crim. 1943);  Attorney General Opinions O-872 (1939);
O-2913 (1940); O-5047 (1943); Attorney General Letter Advisory No. 42
(1973).

This provision is severable and does not affect the constitutionality of other portions of the Act.

## S U M M A R Y

The creation of transit authorities under Senate Bill 642 of the 63rd Legislature and the authorization of an "emission tax" are not unconstitutional.

Insofar as the Act purports to delegate to the board of an authority the power to define crimes and fix punishments for their violation, that portion is unconstitutional. However, it is severable and does not invalidate the entire Act.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

LARRY F. YORK, First Assistant

DAVID M. KENDALL, Chairman
Opinion Committee