**Affirmed and Memorandum Opinion filed March 5, 2019.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-18-00245-CV

---

## IN RE SEAN CHRISTOPHER WILLIAMS, Appellant

---

### On Appeal from the 312th District Court
### Harris County, Texas
### Trial Court Cause No. 2017-80611

---

## M E M O R A N D U M   O P I N I O N

Appellant Sean Christopher Williams appeals the trial court's denial of his petition to change his name, race, and nationality. Finding no abuse of discretion, we affirm the trial court's judgment.

### I. JURISDICTION

Williams asserts on appeal that the trial court lacked subject-matter jurisdiction "to deal with a case concerning race/nationality" because the trial court was neither the Supreme Court of the United States nor a consulate. In support of this statement, Williams cites the following provision of the federal constitution:

> In all Cases affecting Ambassadors, other public Ministers and Consuls, and those in which a State shall be Party, the supreme Court shall have original Jurisdiction. In all the other Cases before mentioned, the supreme Court shall have appellate Jurisdiction, both as to Law and Fact, with such Exceptions, and under such Regulations as the Congress shall make.

U.S. CONST. art. III, § 2, cl. 2.

The proceeding in the trial court did not concern ambassadors, public ministers, or consuls. It was not an appeal, and the State was not a party. Thus, this provision is inapplicable.

## II. REQUESTED NAME CHANGE

We review the trial court's ruling on a petition for an adult name change for abuse of discretion. *See In re Jones*, 507 S.W.3d 405, 407 (Tex. App.—Houston [1st Dist.] 2016, no pet.). A trial court abuses its discretion if it rules arbitrarily, unreasonably, without regard to guiding legal principles, or without supporting evidence. *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998). A trial court does not abuse its discretion in denying a petition that fails to comply with the statutory requirements. *See Jones*, 507 S.W.3d at 407–08.

By statute, a petition to change an adult's name must be verified and must include the reason the name change is requested. *See* TEX. FAM. CODE ANN. § 45.102(a). The petition also must include the petitioner's "assigned FBI number, state identification number, if known, or any other reference number in a criminal history record system that identifies the petitioner," "any offense above the grade of Class C misdemeanor for which the petitioner has been charged," and "the case number and the court if a warrant was issued or a charging instrument was filed or presented" for such an offense. *Id.* § 45.102(b)(1)(G), (b)(2), (b)(3).

2

In his amended petition, Williams did not mention an FBI number, state identification number, or other reference number in a criminal-history record system. He additionally denied under penalty of perjury that he had ever been charged with a Class A or B misdemeanor. But Williams admits on appeal what his background check revealed in the trial court: he does have an FBI number, and he has been charged with multiple class A or B misdemeanors. Because Williams failed to comply with the statutory requirements for an adult name change, the trial court did not abuse its discretion in denying the requested change.

In arguing to the contrary, Williams relies on "Resolution 75" purportedly adopted by the Pennsylvania House of Representatives on April 17, 1933. According to the copy of this document in the record, the resolution granted members of the Moorish-American Society of Philadelphia the right "to use the name affixes El or Ali or Bey or any other prefix or suffix to which they have heretofore been accustomed to use or which they may hereafter acquire the right to use." Williams does not claim to be a member of the Moorish-American Society of Philadelphia, and in any event, the resolution has no effect in Texas.

Williams also asserts that the Constitution of the State of Texas "expressly protects against laws that affect my right to change my name and the estate of minors." The provision he cites states, "The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law, authorizing: changing the names of persons or places; [or] . . . affecting the estates of minors, or persons under disability . . . ." TEX. CONST. art. III, § 56(a)(3), (a)(20). According to Williams, the trial court's denial of his petition effectively "made a special law that since I have been charged with multiple misdemeanors and have an FBI number it is not in the interest of the public for me to change my name and race/nationality." But the constitutional provision he cites applies only to local or special laws passed

by the legislature, that is, local or special statutes. The trial court's application of a general, statewide law such as the statute prescribing the requirements for an adult name-change petition is not a local or special statute. *Cf. Cameron County v. Wilson*, 160 Tex. 25, 29, 326 S.W.2d 162, 165 (1959) (explaining that a statute is not a local or special law "if persons or things throughout the State are affected thereby or if it operates upon a subject in which the people at large are interested"). Moreover, the trial court's denial of Williams's petition for an adult name change could not affect the estate of a minor because Williams is an adult, and by definition, such a petition can be filed only by an adult. *See* TEX. FAM. CODE ANN. § 45.101.

### III. REQUESTED RACE/NATIONALITY CHANGE

Williams also petitioned the district court to change his "Race/Nationality" from "Black/African American" to "Moor/Americas Aboriginal National . . . but not a citizen of the United States." The trial court did not abuse its discretion in failing to do so.

A person born in the United States is a national and citizen of the United States. *See* U.S. CONST. amend. XIV, § 1; 8 U.S.C. § 1401(a) (2012). This is equally true of a person born in the United States "to a member of an Indian, Eskimo, Aleutian, or other *aboriginal* tribe." *Id.* § 1401(b) (emphasis added). A person can relinquish his United States nationality by voluntarily performing certain acts with the intention of relinquishing his United States nationality. *See id.* § 1481.

Williams admits that he was born in Texas, and he did not allege that he had committed a voluntary act of expatriation under federal law. He instead argued that he was never a United States citizen because his citizenship was conferred on him at birth, and being by definition a minor at that time, he lacked the capacity to contract. In effect, he argued that the contract establishing his citizenship on the day of his

4

birth is void because he was under a legal disability at the time.[1]  Williams's citizenship, however, was not bestowed by contract but by the United States Constitution.  His argument is therefore inapplicable.

Moreover, Williams sought to terminate his United States citizenship while remaining a United States national.  Williams identifies no authority that permits a Texas district court to render such relief.  *Cf. Matter of Davis*, 16 I. & N. Dec. 514, 525 (BIA 1978) ("[W]hen a person renounces his citizenship, he necessarily renounces his American nationality as well.").  A person can be a United States national by birth without being a United States citizen.  For example, a person born in an outlying possession of the United States to non-citizen parents is a national, but not a citizen, of the United States.  *See* 8 U.S.C. § 1408(1).  Williams, however, is by birth both a national and a citizen of the United States, and we know of no law authorizing a Texas state court to retain one while terminating the other.

---

[1] This argument seems not to have been raised in a decision by the Twelfth Court of Appeals in a case in which the identical change was requested.  In *In re Bey*, as here, the appellant asked the trial court to change his "Race/Nationality" from "Negro/Black/African American" to "Moor/Americas Aboriginal National, 'but not a citizen of the United States.'"  *In re Bey*, No. 12-18-00017-CV, 2018 WL 3626511, at *1 (Tex. App.—Tyler July 31, 2018, no pet.) (mem. op.).  The *Bey* court noted that a person can relinquish his citizenship pursuant to 8 U.S.C. § 1481, and it stated that "relinquishment of citizenship is a federal question" over which the federal courts have jurisdiction.  *Id.* (citing 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."))  Because federal courts have jurisdiction over cases "arising under" federal law, our sister court concluded that the district court lacked jurisdiction "to consider Bey's petition to change his 'race/nationality' so that he is no longer a citizen of the United States."  *Id.* at *1.  *But see Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 378, 132 S. Ct. 740, 748, 181 L. Ed. 2d 881 (2012) ("In cases 'arising under' federal law . . . , there is a 'deeply rooted presumption in favor of concurrent state court jurisdiction,' rebuttable if 'Congress affirmatively ousts the state courts of jurisdiction over a particular federal claim.'" (quoting *Tafflin v. Levitt*, 493 U.S. 455, 458–459, 110 S. Ct. 792, 107 L. Ed. 2d 887 (1990))).  We need not determine whether the presumption of concurrent jurisdiction was rebutted in this case because Williams does not claim to have expatriated himself under federal law.

Further, even if a Texas state court could treat Williams's United States citizenship separately from his nationality, the trial court did not abuse its discretion in failing to confer on Williams the "Race/Nationality" of "Moor/Americas Aboriginal National." If this designation was intended to make Williams a member of an American aboriginal tribe, the trial court not grant such relief, for a tribe determines for itself who is eligible for membership.[2] If Williams's request instead was intended as a correction to recognize that his "Race/Nationality" already is that of a "Moor/Americas Aboriginal National," there is no evidence that Texas or the United States recognizes the existence of such a race, aboriginal tribe, or nation.

Williams additionally argues that he "never legally consented for my race/nationality to be black" and that "this was done when I was baby," and thus, unable to enter into a binding contract. But just as with Williams's citizenship, the identification of Williams's race on his birth records was not shown to be a matter of contract. He also states on appeal, "Currently my birth records have my race as black, other records indicate that my nationality is African American[.] Black has no legal standing in law and there is no African American Nation." As best we can determine, Williams contends that (a) the law does not recognize the existence of a race denoted as "black," and (b) "African American" is not a nationality. The first contention is simply mistaken. *See, e.g.*, *Batson v. Kentucky*, 476 U.S. 79, 85, 106 S. Ct. 1712, 1716, 90 L. Ed. 2d 69 (1986) ("[T]he State denies a black defendant equal protection of the laws when it puts him on trial before a jury from which members of his race have been purposefully excluded." (citing *Strauder v. West Virginia*, 10 Otto 303, 100 U.S. 303, 25 L. Ed. 664 (1880))). As for Williams's

---

[2] *See* U.S. Dep't of the Interior/Tribal Nations/Tribal Enrollment Process, at https://www.doi.gov/tribes/enrollment, (last visited Feb. 25, 2019).

6

nationality, that term "is often used synonymously with *citizenship*,"[3] and the criminal histories obtained from the Texas Department of Public Safety and the Federal Bureau of Investigations identify Williams as a United States citizen. The record contains no evidence that any legal document identifies his nationality as African American.

For all of these reasons, we overrule the sole issue presented.

## IV. CONCLUSION

Finding no abuse of discretion, we affirm the trial court's judgment.

/s/    Tracy Christopher
Justice

Panel consists of Justices Christopher, Hassan, and Poissant.

---

[3] *Nationality*, BLACK'S LAW DICTIONARY (10th ed. 2014).