AIRLINE CAR RENTAL, INC.

v.

SHREVEPORT AIRPORT AUTHORITY.

Civ. A. No. 85–1201.

United States District Court,
W.D. Louisiana,
Shreveport Division.

Opinion on Cross-Motions for Summary
Judgment April 13, 1987.

Opinion July 28, 1987.

See also 667 F.Supp. 293.

Charles W. Strickland, Frances Baker Jack, Shreveport, La., for plaintiff.

John M. Madison, Jr., Wiener, Weiss, Madison and Howell, Shreveport, La., for defendant.

VERON, District Judge.

## OPINION ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

The plaintiff, Airline Car Rental, Inc. ("Airline"), brought suit against the Shreveport Airport Authority ("the Authority") challenging its "Resolution Establishing Regulations and Fees for Rental Car Businesses Operating at the Shreveport Regional Airport Without a Lease." The matter is now before the court on cross-motions for summary judgment. After considering the pleadings and memoranda of law, as well as oral argument heard November 25, 1986, the court determines that the plaintiff's motion for summary judgment should be denied and the defendant's motion granted in part and denied in part.

## FACTS

The material facts are undisputed and are as follows:

Airline, a rental car business located near the airport, operates a free shuttle service between the airport and its business premises. Airline's shuttles pick up and drop off customers at designated loading zones on Claude Hamel Drive, a circular roadway servicing the airport terminals. Airline's shuttle drivers do not solicit customers or engage in car rental transactions. They provide transportation to customers only upon request. A large majority of Airline's customers pre-arrange their car rentals through the national reservation system of Avis, of whom Airline is a licensee.

Prior to 1977 Airline leased one of three concession areas within the terminal facilities. In 1977 Airline lost its lease when three competing rental car businesses outbid it. Airline then moved to its present location near the airport, expending approximately $748,000 on the new facilities.

Since 1977 Airline has not bid on leases for concession areas, despite construction of a fourth area which has remained vacant.

Currently three rental car businesses, The Hertz Corp., National Rent-a-Car, and Budget Rent-a-Car, lease counter space within the airport terminal and vehicle service and storage areas on airport grounds. In addition to rental fees, these tenant rental car businesses pay ten percent of their gross receipts derived from car rental transactions consummated in the airport.

On April 1, 1985 the Authority adopted its "Resolution Establishing Regulations and Fees for Rental Car Businesses Operating at the Shreveport Regional Airport without a Lease" (hereinafter cited as "Resolution"), which imposes on non-tenant rental car businesses a fee of seven percent of all gross business receipts derived from the rental of vehicles to passengers picked up at the airport. Resolution § 7(3)(F). Non-tenant rental car businesses must also comply with various disclosure, reporting, and operating requirements. Resolution § 7.

The Resolution's stated purpose is "to retire Authority debts incurred for the construction of Airport facilities, pay for Airport operation and maintenance, manage the Airport, pay for Airport equipment, protect the public, preserve order, provide for the public health, safety and welfare, enchance the welfare of the Authority, and govern the Airport." Resolution § 1. In briefs and oral argument before this court, the Authority has contended it adopted the Resolution to protect revenue derived from current tenant car rental businesses by discouraging their movement to off-premises locations.

Airline brought suit challenging the Resolution on April 30, 1985. The case is now before the court on cross motions for summary judgment. The Authority requests summary judgment dismissing each of Airlines remaining claims that the Authority adopted the Resolution in violation of the Commerce Clause, in violation of state and federal Equal Protection Clauses, in violation of state and federal anti-trust laws, and without lawful authority. Airline seeks summary judgment only on the grounds that the Resolution violates state and federal Equal Protection clauses and was adopted without lawful authority. The merits of the motions will be discussed as to each of Airline's remaining claims in turn.

## I. Commerce Clause Claim.

The Authority bases its argument for summary judgment as to Airline's Commerce Clause claim on the market participant doctrine established by the United States Supreme Court in *Hughes v. Alexandria Scrap Corp.*, 426 U.S. 794, 96 S.Ct. 2488, 49 L.Ed.2d 220 (1976). Under the doctrine, "when a state or local government enters the market as a participant it is not subject to the restraints of the Commerce Clause." *White v. Massachusetts Council of Construction Employers*, 460 U.S. 204, 208, 103 S.Ct. 1042, 1044, 75 L.Ed.2d 1 (1983). As the Court explained, "[T]he Commerce Clause responds principally to state taxes and regulatory measures impeding free private trade in the national marketplace. There is no indication of a constitutional plan to limit the ability of the States themselves to operate freely in the free market." *Reeves, Inc. v. Stake*, 447 U.S. 429, 436–37, 100 S.Ct. 2271, 2277, 65 L.Ed.2d 244 (1980) (citations omitted). Because this court finds that the Authority acts as a market regulator rather than a market participant in the car rental market, the Authority's motion must be denied as to Airline's Commerce Clause claim.

The Supreme Court has defined the scope of the market participant doctrine, stating, "The limit of the market-participant doctrine must be that it allows a State to impose burdens on commerce within the market in which it is a participant, but allows it to go no further." *South-Central Timber Development, Inc. v. Wunnicke*, 467 U.S. 82, 97, 104 S.Ct. 2237, 2245, 81 L.Ed.2d 71 (1984). In the present case the Authority's Resolution imposes a burden directly on the car rental market; therefore, to determine whether the Authority's Resolution is subject to scrutiny under the

Commerce Clause, this court must determine whether the Authority is a participant in that market.

In *Smith v. Department of Agriculture of the State of Georgia,* 630 F.2d 1081 (5th Cir.1980), *cert. denied* 452 U.S. 910, 101 S.Ct. 3040, 69 L.Ed.2d 412 (1981), the United States Court of Appeals for the Fifth Circuit faced a closely analogous situation. In *Smith* the State owned and operated the Columbus Farmers Market, leasing out space therein to individual growers who sold their produce to the general public. The plaintiff challenged a rule by which non-residents of Georgia were assigned inferior sales locations. Finding that the market-participant doctrine did not shield Georgia from the limitations of the Commerce Clause, the Fifth Circuit reasoned:

> Admittedly, the market is owned, operated and partially financed by the State of Georgia. On the other hand, it is significant that appellants neither produce the goods to be sold at the market, nor engage in the actual buying or selling of those goods. In essence, the State of Georgia has simply provided a suitable marketplace for the buying and selling of privately owned goods. ... Accordingly, the State of Georgia cannot be deemed an actual market participant at the Columbus Farmers Market. Rather, its essential role is that of market regulator.

*Smith,* 630 F.2d at 1083.

In the present case the Authority argues that by providing concession areas to rental car businesses for a fee, the Authority has entered the market for ground transportation services. Concededly, as the producer and provider of concession areas, the Authority does act in a proprietary capacity, and may impose burdens on the market for such concession areas without being subject to Commerce Clause scrutiny. *See, e.g., Transport Limousine of Long Island, Inc. v. Port Authority,* 571 F.Supp. 576 (E.D.N.Y.1983); *Salem Transportation Co. of New Jersey v. Port Authority,* 611 F.Supp. 254 (S.D.N.Y.1985). But the Authority "may not impose conditions, whether by statute, regulation, or contract, that

have a substantial regulatory effect outside of that particular market. Unless the 'market' is relatively narrowly defined, the doctrine has the potential of swallowing up the rule that States may not impose substantial burdens on interstate commerce." *South-Central Timber Development, Inc.,* 467 U.S. at 97–98, 104 S.Ct. at 2245.

The Authority has not entered the market for rental car services. The Authority neither provides nor purchases these services. Rather, the Authority has simply created a suitable marketplace for the buying and selling of these services by private individuals. In the market for rental car services, the Authority's role, then, is essentially that of a market regulator. As such, the Authority's Resolution is subject to scrutiny under the Commerce Clause.* For this reason the Authority's motion for summary judgment must be denied as to Airline's Commerce Clause claim.

II.  Antitrust Claims.

The Authority claims entitlement to summary judgment dismissing Airline's federal antitrust claims under the state action doctrine of *Parker v. Brown,* 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943). "In *Parker,* relying on principles of federalism and state sovereignty, the Court refused to construe the Sherman Act as applying to the anticompetitive conduct of a State acting through its legislature." *Town of Hallie v. City of Eau Claire,* 471 U.S. 34, 38, 105 S.Ct. 1713, 1716, 85 L.Ed.2d 24 (1985).

■  Municipalities, however, are not beyond the reach of federal antitrust laws by virtue of their status because they are not themselves sovereigns. "[B]efore a municipality will be entitled to the protection of the state action exemption from the antitrust laws, it must demonstrate that it is engaging in the challenged activity pursuant to a clearly expressed state policy." *Town of Hallie,* 471 U.S. at 40, 105 S.Ct. at 1717.

■  To satisfy the clear articulation requirement, a local government need not point to a specific, express legislative au-

---

* This decision should in no way imply that the    Resolution would not survive such scrutiny.

thorization of anticompetitive conduct. Holding that Wisconsin statutes had sufficiently articulated a state policy which permitted anticompetitive conduct in the provision of sewage services, the Supreme Court in *Town of Hallie* stated:

> As discussed above, the statutes clearly contemplate that a city may engage in anticompetitive conduct. Such conduct is a foreseeable result of empowering the City to refuse to serve unannexed areas. It is not necessary ... for the state legislature to have stated explicitly that it expected the City to engage in conduct that would have anticompetitive effects. ... [I]t is sufficient that the statutes authorized the City to provide sewage services and also to determine the areas to be served. We think it is clear that anticompetitive effects logically would result from this broad authority to regulate.

*Town of Hallie*, 471 U.S. at 42, 105 S.Ct. at 1718.

Recently, the Fifth Circuit applied the state action test to determine whether the City of Houston was immune from federal antitrust liability for granting an exclusive concession for taxicab service provided to airline passengers at Houston Intercontinental Airport. In finding a clear articulation of a state policy to displace competition, the court relied on two statutes. The first vested extensive regulatory discretion in cities over the taxicab industry. The Fifth Circuit analyzed the second provision as follows:

> More particularly, though, the state has specifically authorized its municipalities to grant contracts for the provision of goods and services at their airports:
>
> "(a) ... In operating an airport ... such municipality may ... enter into contracts, leases, and other arrangements for a term not exceeding forty (40) years with any persons:
>
> . . . .
>
> (2) Conferring the privilege of supplying goods, commodities, things, services or facilities at such airport. . . .
>
> . . . .

In each case the municipality may establish the terms and conditions and fix the charges, rentals or fees for the privileges or services. . . ."

*Id.* at 46d–4 (Vernon 1969). While the latter provision falls short of expressly mentioning the establishment of ground transportation services, the statute's broad phrasing is a strong indication of the state's desire to abdicate in favor of municipal prescience with regard to airport management. This is all the indication we require.

*Independent Taxicab Drivers' Employees v. Greater Houston Transportation Co.,* 760 F.2d 607, 610–11 (5th Cir.), *cert. denied* 474 U.S. 903, 106 S.Ct. 231, 88 L.Ed.2d 230 (1985); *see also Woolen v. Surtran Taxicabs, Inc.,* 801 F.2d 159 (5th Cir.1986) (per curiam).

In the present case the court must decide whether nearly identical statutory provisions clearly articulate a state policy to replace competition. The City of Shreveport created the Authority to operate Shreveport Regional Airport pursuant to Louisiana Airport Authorities Law, La.Rev. Stat.Ann. 2:601–613 (West 1973 and Supp. 1987). Louisiana statutory law provides:

> In connection with the operation of an airport ... controlled by an authority, the authority may enter into contracts, leases, and other arrangements with any persons (1) granting the privilege of using ... the airport or ... any portion or facility thereof or space therein for commercial purposes; [and] (2) conferring the privilege of supplying ... services ... at the airport or air navigation facility.

La.Rev.Stat.Ann. 2:605(A) (West 1973).

While the Louisiana statute, like the Texas statutes considered by the Fifth Circuit in *Independent Taxicabs*, fail to mention expressly ground transportation services, the statutes do clearly indicate the state's desire to vest control of airport management in municipalities and their agencies. This is sufficient to bring the Authority within the Parker exemption from federal antitrust liability.

The Authority also seeks summary judgment dismissing Airline's state antitrust claims. The Authority points out that Louisiana's antitrust statutes, La.Rev.Stat. Ann. 51:121–152 (West 1965 and Supp. 1987), are similar to federal antitrust laws. *Loew's, Inc. v. Don George, Inc.*, 237 La. 132, 110 So.2d 553, 558 (1959). The Authority contends that the Louisiana antitrust statutes, like federal law, should not be construed as applying to a municipality acting pursuant to a clearly expressed state policy.

■ The principles of federalism and state sovereignty on which the Supreme Court relied in *Parker* have no bearing on the question whether *state* antitrust laws should apply to municipalities acting pursuant to a clearly expressed state policy permitting anticompetitive conduct; however, it would be illogical to hold that a state legislature which had clearly articulated such a policy nevertheless intended that a municipality acting pursuant to that policy should be subject to liability under state antitrust laws. For this reason, the court will dismiss both Airline's federal and state antitrust claims.

III. Equal Protection Claims.

Both Airline and the Authority seek summary judgment as to Airline's claims based on federal and state Equal Protection Clauses. For the following reasons, the court grants the defendant's motion and denies the plaintiff's motion as to these claims.

A. Federal Equal Protection Claim.

■ The Fourteenth Amendment to the United States Constitution guarantees to all persons equal protection of the laws. Statutory classifications which are arbitrary violate one's right to equal protection. *Johnson v. Robison*, 415 U.S. 361, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974). Airline contends that the Resolution creates two classes, (1) non-tenant car rental businesses and (2) all other off-airport businesses which use courtesy buses to pick up or deliver customers at the airport. Airline further contends that the Resolution arbitrarily treats members of the first class differently from members of the second by requiring Airline and other non-tenant car rental businesses to pay a fee of seven percent of gross receipts for access to the airport terminals while other shuttle service operators pay only a lower flat fee or no fee at all.

Airline does not contend the Resolution impinges upon a fundamental right or discriminates against a suspect class. The challenged Resolution is solely a local economic regulation. The Supreme Court has provided the following guidance for considering whether an economic regulation violates equal protection guarantees:

When local economic regulation is challenged solely as violating the Equal Protection Clause, this Court consistently defers to legislative determinations as to the desirability of particular statutory discriminations. Unless a classification trammels fundamental personal rights or is drawn upon inherently suspect distinctions such as race, religion, or alienage, our decisions presume the constitutionality of the statutory discriminations and require only that the classification challenged be rationally related to a legitimate state interest. States are accorded wide latitude in the regulation of their local economies under their police powers, and rational distinctions may be made with substantially less than mathematical exactitude. Legislatures may implement their program step by step in such economic areas, adopting regulations that only partially ameliorate a perceived evil and deferring complete elimination of the evil to future regulations. In short, the judiciary may not sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines; in the local economic sphere, it is only the invidious discrimination, the wholly arbitrary act, which cannot stand consistently with the Fourteenth Amendment.

*City of New Orleans v. Dukes*, 427 U.S. 297, 303–304, 96 S.Ct. 2513, 2516, 49 L.Ed.2d 511 (1976) (citations omitted).

To decide whether the challenged Resolution passes the rationality test, this court must answer two questions: "(1) Does the challenged legislation have a legitimate purpose? and (2) Was it reasonable for the lawmakers to believe that use of the challenged classification would promote that purpose?" *Western & Southern Life Insurance Co. v. State Board of Equalization,* 451 U.S. 648, 668, 101 S.Ct. 2070, 2083, 68 L.Ed.2d 514 (1981).

The Resolution's stated purpose is "to retire Authority debts incurred for the construction of Airport facilities, pay for Airport operation and maintenance, manage the Airport, [and] pay for equipment." Resolution § 1. There can be no doubt that raising revenue is a legitimate state purpose. *San Antonio Independent School District v. Rodriguez,* 411 U.S. 1, 40, 93 S.Ct. 1278, 1300, 36 L.Ed.2d 16 (1973).

Also, in order to receive federal grants for airport development, the Authority must give assurances that it will "maintain a fee and rental structure ... which will make the airport as self-sustaining as possible." 49 U.S.C.A. § 2210 (a)(9) (Supp. 1987). To meet this goal, the Authority adopted the Resolution "to maintain the stream of income derived from car rental businesses operating at the Airport with a lease." Affidavit of Bennett, filed October 16, 1986. According to the uncontested affidavit of Mr. Bennett, Director of Airports, revenues from tenant car rental businesses comprised just over ten percent of the airport's total revenues during the years 1981 through 1985. This court recognizes that the Authority has a legitimate interest in protecting this significant existing source of revenue.

Next, the court must decide whether it was reasonable for the Authority to believe that use of the challenged classifications would protect an existing source of revenue. The two classifications created by the Resolution are treated differently with respect to the fee exacted. Imposition of a fee of seven percent of gross receipts on non-tenant car rental businesses would make operation of car rental businesses off-premises more expensive and thus less attractive than such an operation had been previously; therefore, it was reasonable for the Authority to conclude that the Resolution would discourage current tenant car rental businesses from transferring their operations to off-premises locations. Imposing a similar fee on other businesses who use shuttles at the airport, however, would not have the same discouraging effect. The Authority's use of the challenged classification was rationally related to the legitimate purpose of protecting a significant source of revenue.

Airline's argument to the contrary relies heavily on *Alamo Rent-A-Car, Inc. v. Sarasota-Manatee Airport Authority,* No. 82–836, slip op. (M.D.Fla. Sept. 27, 1985) *appeal docketed* 86–3396 (11th Cir.), which held unconstitutional resolutions imposing a fee of ten percent of gross receipts on non-tenant car rental companies and a flat fee of $800 per year per vehicle on other companies operating airport shuttles. The court reasoned "[I]n terms of raising revenue, there is no apparent rational reason for charging one group a nominal fee while charging the other group a substantial percentage of its receipts." *Alamo Rent-A-Car, Inc.,* No. 82–836, slip. op. at 6. This reasoning is not persuasive in the present case where the Authority adopted the Resolution not merely to raise revenue, but also to protect existing sources of revenue.

**B. State Equal Protection Claim.**

■ La. Const. art. I, § 3, commands the courts to decline enforcement of legislative classifications in three different situations: (1) When the law classifies individuals by race or religious beliefs, it shall be repudiated completely; (2) When the statute classifies persons on the basis of birth, age, sex, culture, physical condition, or political ideas or affiliations, its enforcement shall be refused unless the state or other advocate of the classification shows that the classification has a reasonable basis; (3) When the law classifies individuals on any other basis, it shall be rejected whenever a member of a disadvantaged class shows that it does

not further any appropriate state interest.

*Sibley v. Board of Supervisors of Louisiana State University,* 477 So.2d 1094, 1107–8 (La.1985). Because the Resolution is solely an economic regulation, it must be sustained if it furthers some appropriate state interest. For the reasons discussed above with respect to Airline's federal equal protection claim, the court concludes that the Resolution does further an appropriate state interest.

Accordingly, Airline's motion for summary judgment based on its equal protection claims will be denied and the Authority's motion for summary judgment dismissing these claims will be granted.

**IV. Adoption Without Authority.**

■ In a supplemental motion Airline argues it is entitled to summary judgment as a matter of law because the Authority adopted the Resolution without lawful authority to regulate Claude Hamel Drive, the circular roadway servicing airport terminals on airport grounds. The Authority has also submitted a motion for summary judgment dismissing this claim.

In support of its motion, Airline offers copies of plats filed in Caddo Parish which dedicate to public use Claude Hamel Drive. A statutory dedication of a roadway vests full ownership of the roadway in the municipality where the roadway is located. *Garrett v. Pioneer Production Co.,* 390 So.2d 851 (La.1980). The dedication of Claude Hamel Drive vests full ownership of this roadway in the City of Shreveport.

Airline acknowledges that the public's right to use a public roadway is subject to the municipality's power to regulate use of that public roadway. *See Scott v. City of West Monroe,* 95 So.2d 343 (La.App. 2d Cir.1957). Airline argues that because the City of Shreveport owns Claude Hamel Drive, the power to regulate the roadway rests with the City of Shreveport and not with the Authority; therefore, the Authority lacked the power to adopt the challenged Resolution.

Under Louisiana law, when a governing body such as the City of Shreveport creates an airport authority, the airport authority receives "all powers necessary and convenient ... [t]o exercise all or any portion of the administrative powers, functions and authority, relative to airports, vested in the governing body." La.Rev.Stat.Ann. 2:604 (West 1973). The Authority is further "authorized to adopt, amend, and repeal such reasonable resolutions, rules, regulations, and orders as it shall deem necessary for the management, government, and use of any airport or air navigation facility owned by it or under its control." La.Rev.Stat. Ann. 2:606 (West 1973). In creating the Authority, the City of Shreveport conferred upon the Authority broad powers, including the power to regulate Claude Hamel Drive. Because the Authority did have the power to regulate Claude Hamel Drive, it had the power to adopt the challenged Resolution, and Airline's motion for summary judgment must be denied.

## CONCLUSION

For the foregoing reasons, an order is issued herewith denying the plaintiff's motion for summary judgment and supplemental motion for summary judgment. The defendant's motion will be denied insofar as it requests summary judgment as to Count I of the plaintiff's complaint and granted insofar as it requests summary judgment as to Counts II, IV, V, VI, VII, XII, and XVI.

## OPINION

The plaintiff, Airline Car Rental, Inc. ("Airline"), brought suit against the defendant Shreveport Airport Authority ("the Authority") challenging its "Resolution Establishing Regulations and Fees for Rental Car Businesses Operating at the Shreveport Regional Airport Without a Lease." The matter was previously before the Court on cross-motions for summary judgment. On April 13, 1987, the Court denied Airline's motion for summary judgment and granted the Authority's motion for summary judgment as to all issues except the question of whether the resolution violated the Commerce Clause. The Authority has now moved again for summary judg-

ment on the remaining issue asserting an alternative basis. Airline has in turn filed a cross-motion for summary judgment.

The material facts are undisputed and have remained the same since the time of the Court's April 13, 1987 decision. The Court will herein adopt the facts as articulated in that opinion.

Airline, a rental car business located near the airport, operates a free shuttle service between the airport and its business premises. Airline's shuttles pick up and drop off customers at designated loading zones on Claude Hamel Drive, a circular roadway servicing the airport terminals. Airline's shuttle drivers do not solicit customers or engage in car rental transactions. They provide transportation to customers only upon request. A large majority of Airline's customers pre-arrange their car rentals through the national reservation system of Avis, of whom Airline is a licensee.

Prior to 1977 Airline leased one of three concession areas within the terminal facilities. In 1977 Airline lost its lease when three competing rental car businesses outbid it. Airline then moved to its present location near the airport, expending approximately $748,000 on the new facilities. Since 1977 Airline has not bid on leases for concession areas, despite construction of a fourth area which has remained vacant.

Currently three rental car businesses, The Hertz Corp., National Rent-a-Car, and Budget Rent-a-Car, lease counter space within the airport terminal and vehicle service and storage areas on airport grounds. In addition to rental fees, these tenant rental car businesses pay ten percent of their gross receipts derived from car rental transactions consummated in the airport.

On April 1, 1985 the Authority adopted its "Resolution Establishing Regulations and Fees for Rental Car Businesses Operating at the Shreveport Regional Airport without a Lease" (hereinafter cited as "Resolution"), which imposes on non-tenant rental car businesses a fee of seven percent of all gross business receipts derived from the rental of vehicles to passengers picked up at the airport. Resolution § 7(3)(F).

Non-tenant rental car businesses must also comply with various disclosure, reporting, and operating requirements. Resolution § 7.

The Resolution's stated purpose is "to retire Authority debts incurred for the construction of Airport facilities, pay for Airport operation and maintenance, manage the Airport, pay for Airport equipment, protect the public, preserve order, provide for the public health, safety and welfare, enchance the welfare of the Authority, and govern the Airport." Resolution § 1. In briefs and oral argument before this court, the Authority has contended it adopted the Resolution to protect revenue derived from current tenant car rental businesses by discouraging their movement to off-premises locations.

In its original motion (see p. 305),

[t]he Authority base[d] its argument for summary judgment as to Airline's Commerce Clause claim on the market participant doctrine established by the United States Supreme Court in *Hughes v. Alexandria Scrap Corp.*, 426 U.S. 794, 96 S.Ct. 2488, 49 L.Ed.2d 220 (1976). Under the doctrine, 'when a state or local government enters the market as a participant it is not subject to the restraints of the Commerce Clause.' *White v. Massachusetts Council of Construction Employers*, 460 U.S. 204, 208, 103 S.Ct. 1042, 1044, 75 L.Ed.2d 1 (1983). As the Court explained, '[T]he Commerce Clause responds principally to state taxes and regulatory measures impeding free private trade in the national marketplace. There is no indication of a constitutional plan to limit the ability of the States themselves to operate freely in the free market.' *Reeves, Inc. v. Stake*, 447 U.S. 429, 436–37, 100 S.Ct. 2271, 2277, 65 L.Ed.2d 244 (1980) (citations omitted).

This Court, however, found that the Authority acts as a market regulator instead of a market participant in the car rental market. As such the Resolution was subject to scrutiny under the Commerce Clause and summary judgment was denied as to the Commerce Clause claim. Left open for later determination was the ques-

tion of whether the Resolution could survive the scrutiny under the Commerce Clause for market regulation.

### DISCUSSION OF LAW

■ In determining whether a State has overstepped its role in regulating interstate commerce, this Court has distinguished between state statutes that burden interstate transactions only incidentally, and those that affirmatively discriminate against such transactions. While statutes in the first group violate the Commerce Clause only if the burdens they impose on interstate trade are 'clearly excessive in relation to the putative local benefits,' *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970), statutes in the second group are subject to more demanding scrutiny. The Court explained in *Hughes v. Oklahoma*, 441 U.S. 322, 336, 99 S.Ct. 1727, 1736, 60 L.Ed.2d 250 (1979), that once a state law is shown to discriminate against interstate commerce 'either on its face or in practical effect,' the burden falls on the State to demonstrate both that the statute 'serves a legitimate local purpose,' and that this purpose could not be served as well by available nondiscriminatory means. (citations omitted).

*Maine v. Taylor*, 477 U.S. 131, 106 S.Ct. 2440, 2447–2448, 91 L.Ed.2d 110 (1986).

The Resolution in question here clearly does not affirmatively discriminate against interstate transactions. The seven percent fee established by the resolution is assessed against all of an off-premises car rental company's airport customer receipts, and not merely against receipts for customers arriving from out of state. Neither is the ten percent fee for on-premises car rental companies based on whether the customer is from Louisiana or another state. Additionally, no distinction is made on the basis of whether a car rental company is domiciled in this state or in another state. Therefore, any burden the Resolution might have on interstate commerce is only incidental. And the "clearly excessive" standard of *Pike* should be applied to deter-

mine if the Resolution burdens the Commerce Clause.

■ It is well established that the Commerce Clause protects the interstate market, rather than particular firms, from prohibitive or burdensome regulation. *Exxon Corporation v. Governor of Maryland*, 437 U.S. 117, 98 S.Ct. 2207, 57 L.Ed.2d 91 (1978); *Executive Town and Country Services v. City of Atlanta*, 789 F.2d 1523 (11th Cir.1986). Thus, any claim of Airline that the Resolution unduly burdened its business is certainly outside the scope of the protective powers of the Commerce Clause and must fail.

In addressing Airline's contention that the Resolution unreasonably burdens interstate commerce, the Court first notes that it has been determined in its prior ruling rejecting Airline's Equal Protection claim that the Resolution is reasonably related to its stated purposes (See pp. 308–310 of that opinion).

Airline asserts that the enforcement of the resolution will increase the interstate traveler's cost of renting a vehicle since Airline would pass the additional cost of doing business (the 7% fee) on to its customers. The alleged burden on commerce under *Pike* is the amount of any increase in rental fees that interstate travelers would incur in renting from Airline.

The putative local benefits are increased revenues for the Authority with which to operate and maintain the airport, along with the protection of a significant and established source of revenue used to operate and maintain the airport. The question therefore becomes: Does the seven percent (7%) of gross receipts fee charged to off-premises car rental companies place such a burden on interstate travelers as to be clearly excessive in relation to the benefits of increasing and protecting income used to operate and maintain the airport? Similar questions have been addressed before.

In *Evansville-Vanderburgh Airport Authority District v. Delta Airlines, Inc.*, 405 U.S. 707, 92 S.Ct. 1349, 31 L.Ed.2d 620 (1972), airlines challenged a "use and service charge" of one (1) dollar for each

passenger enplaning any commercial aircraft operated from the particular airport in question. The fee was imposed to help defray the costs of airport construction and maintenance. The basis for the challenge was that the fee was violative of the Commerce Clause.

The Supreme Court, in finding that the enplaning fee was not violative of the constitution quoted from its prior case of *Hendrick v. Maryland*, 235 U.S. 610, 35 S.Ct. 140, 59 L.Ed. 385 (1915):

> [W]here a state at its own expense furnishes special facilities for the use of those engaged in commerce, interstate as well as domestic, it may exact compensation therefor. The amount of the charges and the method of collection are primarily for determination by the state itself; and so long as they are reasonable and are fixed according to some uniform, fair, and practical standard, they constitute no burden on interstate commerce. (citations omitted).

405 U.S. at 712–713, 92 S.Ct. at 1353.

The Supreme Court, in *Evansville*, then went on to state that:

> ... it [is] settled that a charge designed only to make the user of state-provided facilities pay a reasonable fee to help defray the costs of their construction and maintenance may constitutionally be imposed on interstate and domestic users alike. The principle that burdens on the right to travel are constitutional only if shown to be necessary to promote a compelling state interest has no application in this context. *See Shapiro v. Thompson*, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969). The facility provided at public expense aids rather than hinders the right to travel. A permissible charge to help defray the cost of the facility is therefore not a burden in the constitutional sense.

*Id.* at 714, 92 S.Ct. at 1354.

In the instant case, the airport is a facility provided at public expense which aids persons engaged in interstate travel, as well as intrastate travel. It does not hinder them, thus, raising revenue in order to operate and maintain it aids rather than hinders interstate commerce. The fee established by the Resolution also is reasonable and fixed according to some fair uniform standard, especially in light of similar cases.

In *Toye Bros. Yellow Cab Co. v. Irby*, 437 F.2d 806 (5th Cir.1981), a limousine service challenged a ten (10%) percent gross receipts fee imposed on it for the limousine service's use of an airport to pick up and discharge passengers.

The Fifth Circuit noted that the issue was not whether a fee could be charged, but what a reasonable fee was and how it might be computed. The court then observed that the gross receipts charged was not a tax, but compensation for use of the airport facilities, and that charges levied by states to defray the cost of facilities used in aid of interstate commerce consistently have been held to be permissible. Finally, the court noted that the evidence established that ten (10%) percent of gross receipts is a commonly accepted charge throughout the nation for use of airport facilities, and held that the ten percent fee levied in that case was a reasonable levy which did not constitute an objectionable burden on interstate commerce.

While the Fifth Circuit in *Toye Bros.* specifically held the ten percent gross receipts fee to be reasonable, the fee also was fixed according to a fair, uniform, and practical standard. The fee was fair both because it was reasonable, and because the actual amount paid was directly proportional to the number of customers involved. The fee was uniform both because it was proportional to volume of business, and because it was a commonly accepted charge throughout the nation. Finally, the fee was practical both because it was easy to calculate and administer, and because it was the result of the interaction of supply and demand operating in a free market over a period of years.

Obviously, the facts in *Toye Bros.* are extremely analogous to the facts of this case. Both cases involve a ground transportation service and its use of a public airport. They both involve a percent of gross receipts fee charged for use of the

airport. They both involve a ground transportation service involved in interstate commerce which challenged the fee on Commerce Clause grounds. And both cases involve the issue of the reasonableness of the fee rather than the right to impose the fee.

Inasmuch as the Fifth Circuit already has recognized ten percent of gross receipts as a commonly accepted charge throughout the nation, and has recognized that fee as reasonable and as not placing an objectional burden on interstate commerce, this Court finds that the lower seven (7%) percent gross receipts fee at issue here is reasonable and does not impermissibly burden interstate commerce.

In addition to its argument against the seven percent fee provision of the Resolution, Airline challenges the Resolution's provisions outlining shuttle van and designated pick-up areas as being unduly burdensome on interstate commerce. However, as shown by the attached affidavit of James Bennett, Director of Airports for the Shreveport Airport Authority, the single van limitation has never been enforced, and never will be enforced because SAA is in the process of amending the Resolution specifically to remove the single van limitation of which Airline complains. Furthermore, the affidavit also shows Airline's allegations concerning the location of its designated pick-up areas in relation to the luggage claim areas are groundless. Additionally, the allegations of Airline all concern harm to Airline rather than burden on interstate commerce generally.

For the foregoing reasons, summary judgment is granted in favor of the Authority and against Airline. The Court finds that the Resolution does not impermissible burden interstate commerce and Airline's remaining Commerce Clause claim is accordingly dismissed.