TOM SMITH ET AL V. BILL DECKER, INDIVIDUALLY AND BILL DECKER, IN HIS OFFICIAL CAPACITY AS SHERIFF OF DALLAS COUNTY, TEXAS

No. A-6663. Decided April 30, 1958
(312 S.W. 2d Series 632)

*Albert Reagan* and *Joe McNicholas,* both of Dallas for appellant.

*Henry Wade,* District Attorney, *John J. Fagan* and *A. George Biggs,* Assistants District Attorneys, all of Dallas, for appellee.

MR. JUSTICE SMITH delivered the opinion of the Court.

This is a direct appeal from a judgement rendered in the 14th Judicial District Court of Dallas County, Texas. The suit was originally brought by appellants seeking a mandamus against Bill Decker, Sheriff of Dallas County, to compel him to approve an appearance bond signed by them as sureties for Howard Harold Blodgett, who was then confined in the County Jail of Dallas County, Texas, charged by a Grand Jury indictment with violation of the State Narcotic Law, a felony, his appearance bond having been fixed by the District Judge at $1500.00. Appellee answered and alleged that appellants were engaged in the business of writing bail bonds in Dallas County, Texas in violation of the Acts of the 55th Legislature, Regular Session, Chapter 420, page 1259, as amended by Senate Bill 25, [Vernon's Texas Code Crim. Proc. Art. 271C] known as the Bail Bond Law, without having first been licensed by the Administrator of the Securities Division of the Office of the Secretary of State to engage in such business as required by the provisions of Section 4 of said Act as amended. This charge was not denied but was admitted by appellants. Appellants filed a supplemental petition seeking to declare the Bail Bond Law above mentioned unconstitutional for reasons hereinafter set out, and, in the alternative, for a declaratory judgment, holding the Act to be void and unenforceable, and, in the alternative, an injunction enjoining the appellant from enforcing the provisions of this law. Upon the hearing before the trial judge, appellants withdrew their application for mandamus and declaratory judgment, and the court, after hearing the pleadings, stipulations of the parties, and arguments of counsel found that the refusal of appellee to approve the bail bond submitted by appellants was proper as appellants were not licensed as bail bondsmen as provided by law. The court further found that the Bail Bond Law is constitutional and is a valid and subsisting law and binding on the appellants herein.

■ Because this case is before us by direct appeal and differs from the usual suit to enjoin the enforcement of a statute, in that here no criminal proceedings have yet been instituted against appellants, we believe it necessary to briefly discuss our jurisdiction to order the issuance of the injunction in the event we should feel the statute in question is unconstitutional. Article 5, Section 3b of the Constitution of Texas, expressly provides for direct appeals to the Supreme Court where the issue of constitutionality or unconstitutionality of a statute shall have arisen by reason of the order of a trial court granting or deny-

ing an interlocutory or permanent injunction. While in the great majority of cases of the present kind, injunction was sought to enjoin criminal proceedings already in progress, we have been cited no authorities which hold that an injunction as sought in the present case is premature. This is such an appeal as is authorized by Article 5, Section 3b, supra, and by the Acts of the 48th Legislature, 1943, Chapter 14, Vernon's Civil Statutes, Article 1738a. The record also shows the requirements of Rule 499a, Texas Rules of Civil Procedure, have been followed in perfecting this direct appeal.

■ Appellants both pleaded and proved by stipulation that they are in the business of writing bail bonds and that if Appellee Decker is not restrained from enforcing the said Bail Bond Law, irreparable injury to them will result, for which they will have no adequate remedy at law. That a right to earn a living is a property right within the meaning of our Constitution was early established by the United States Supreme Court in the Slaughter House cases, 16 Wall 36, 21 L.Ed. 394, and a person cannot be deprived of it by simple mandate of the legislature.

In answer to a certified question, this Court held in City of Austin v. Austin City Cemetery Assn., 87 Texas 330, 28 S.W. 528, that if a city ordinance be void, and even though the city was not immediately seeking to enforce it through criminal proceedings, when the facts in the record show that the right and privilege of using their property for cemetery purposes was destroyed or impaired by virtue of the existence of the ordinance, rlators were entitled to an injunction. The Court went on to quote from City of Atlanta v. Gate City Gaslight, 71 Ga. 106, wherein it was held: "Where it is manifest * * * that a prosecution and arrest is threatened for an alleged violation of city ordinances, for the sole purpose of preventing the exercise of civil rights conferred directly by law, injunction is the proper remedy to prevent injury to the party thus menaced." 28 S.W. at page 530. The City of Austin case has been cited very frequently and its principles were adhered to by this Court in the fairly recent case of Kemp Hotel Operating Co. v. City of Wichita Falls, 141 Texas 90, 170 S.W. 2d 217, 219.

Since the Bail Bond Law is a Penal Statute, we believe that the principle sought to be applied in this case is no different from the attack made upon the statutes or ordinances involved in Ex parte Sterling, 122 Texas 108, 53 S.W. 2d 294; Box v. Newsom, Texas Civ. App., 43 S.W. 2d 981; Neiman-Marcus Co. v. City of Houston, Texas Civ. App., 109 S.W. 2d 543 (error re-

fused) ; Kemp Hotel Operating Co. v. City of Wichita Falls, supra.

■ Appellants having a vested property right in making a living, subject only to valid and subsisting regulatory statutes, and being prevented from performing their business otherwise lawful but for the statute in question, we believe that we are permitted under the rule announced in .Kemp Hotel Co. v. City of Wichita Falls, supra, to order the issuance of the injunction. There it was stated that courts of equity may be resorted to for the purpose of enjoining the enforcement of a criminal statute or ordinance when same is void and when its enforcement invades a vested property right of the complainant.

Appellants attack the Bail Bond Law above mentioned because it violates Article 3, Section 56 of the Texas Constitution, which prohibits the Legislature from passing any local or special law where a general law can be made applicable. The contention embraces the proposition that the use by the Legislature of the population brackets set out in the Act constitutes an arbitrary classification, and that the Act, special in nature, is rendered unconstitutional by reason of the fact that such classification bears no reasonable relationship to the objects sought to be accomplished. We sustain this contention.

The caption of the amended Act reads as follows:

"relating to the regulation of the business of giving bail in criminal and quasi-criminal cases; amending Sections 4, and 6 of Chapter 420, Acts of the 55th Legislature, Regular Session, 1957, to make said sections applicable in any county which contains in whole or in part a city containing not less than seventy-three thousand (73,000) inhabitants, and not more than one hundred thousand (100,000) inhabitants, according to the last preceding Federal Census; and declaring an emergency."

Section 1 of the Act reads as follows:

"Any person, firm or corporation, in any court having criminal jurisdiction, or in any criminal or quasi-criminal action or proceeding who shall for another, deposit any cash, bonds and/or other securities, or execute as surety any bond or recognizance, who within a period of ninety (90) days prior thereto shall have, for hire or for any reward, make such a deposit or give such bail in three (3) or more cases not growing out of the same transaction, shall be deemed to be engaged in the business of giving bail.

"(a) Persons actually engaged in the practice of law and who are members of the State Bar of Texas who personally execute bonds or sureties for persons they actually represent in criminal cases or secure others to execute such bonds shall not be deemed bondsmen as defined herein.

"(b) This Act shall not apply to a fidelity, guaranty or surety company duly qualified to act as a surety or guarantor in the State of Texas nor any duly qualified agent thereof, when such fidelity, guaranty or surety company is duly licensed and regulated by the Board of Insurance Commissioners or the Banking Commission."

Section 4 of the Act as amended at the Special Session of the 55th Legislature provides:

"No person, firm or corporation shall engage in the business of making bail within any county containing a city of three hundred and fifty thousand (350,000) inhabitants or more, according to the last preceding Federal Census, or within any county containing in whole or in part a city having a population of not less than seventy-three thousand (73,000) inhabitants, and not more than one hundred thousand (100,000) inhabitants, according to the last preceding Federal Census, without first having been licensed thereto by the Administrator of the Securities Division of the office of the Secretary of State; nor shall any person, firm, or corporation be permitted to engage in such business if such firm, or officer or director of such corporation shall have been convicted of any felony, or of any misdemeanor involving moral turpitude, in this or any other state, or in any Federal Court."

Section 6 of the Act provides for the filing with the Administrator of the Securities Division a sworn application for a license, and sets out the specified information required to be in the application. The language appearing in Sections 4 and 6 indicates that the Legislature intended the Act to be effective in the counties of the State having a city with a population of 350,000 or more according to the last Federal Census, and also in a county containing in whole or in part a city having a population of not less than 73,000 inhabitants and not more than 100,000 inhabitants according to the last preceding Federal census.

■ We held in Duncan, Tax Collector et al v. Gabler, 147 Texas 229, 215 S.W. 2d 155, that when a law duly enacted is attacked as

unconstitutional, the law is presumed to be valid and doubts as to its constitutionality should always be resolved in favor of constitutionality. The question is then: Do the stipulated facts reveal that the population classification bears no reasonable relationship to the objects sought to be accomplished by the Act? We think that they do.

It will be noted that the caption of the amended Act under consideration makes no mention of any county in Texas having within its boundaries a city with a population of 350,000, neither does it mention counties having within its boundaries a city with a population of 350,000, or more, although the body of the Act does mention the latter. The absence of such provision in the caption will be dealt with later in this opinion. At the moment, we shall concern ourselves with the question propounded above in so far as it pertains to the counties containing cities having a population of not less than 73,000 inhabitants and not more than 100,000 inhabitants, according to the last preceding Federal Census.

■ The use of population brackets alone, that is, segregating one county by the Legislature, by reason of population for the purpose of necessary legislation, does not necessarily render a law special in nature and contrary to the constitutional prohibition against same. However, it has long been held that the use of population brackets alone to direct legislation toward a particular county needing a particular type of legislation will not in itself save the law from being unconstitutional as a special law if the classification bears no reasonable relationship to the objects sought to be accomplished. Miller et al. v. El Paso et al., Texas Civ. App., 146 S.W. 2d 1027, reversed on other grounds, 136 Texas 370, 150 S.W. 2d 1000.

There appears to be no logical or apparent reason for the exclusion from the Act of counties having cities of 100,000 to 349,999 inhabitants. There must be a substantial reason for the classification such as attempted here, otherwise the Act must fail. As was said in Leonard v. Luxora Little River Road Maintenance District No. 1, 187 Ark. 599, 61 S.W. 2d 70, 71, which was quoted with approval by this Court in Miller et al v. El Paso County, supra, "The rule is that a classification cannot be adopted arbitrarily upon a ground which has no foundation in difference of situation or circumstances of the municipalities placed in the different classes. There must be some reasonable relation between the situation of municipalities classified and the purposes and objects to be attained."

It is stated in Section 14 of the original Act that there had been an unprecedented increase in the number of forfeited recognizance and bail bonds in criminal cases and there were no adequate laws regulating the business of giving bail, and that public necessity required an immediate enactment of the statute. We can see no situation or circumstance with reference to the necessity of regulating the business of giving bail in counties containing cities with a population of not less than 73,000 inhabitants and not more than 100,000 inhabitants that would be peculiar to such counties and not equally applicable to counties containing cities of more than 100,000 population. In the sense that this statute has been made to apply only to a particular class of counties, the Act is a special law and not a general law. The portion of the Act just discussed provides an arbitrary classification of counties and cities to be affected by the law, special in nature, and there is no reasonable relationship between the situation of the counties therein sought to be classified and the purpose and objects of the Act.

Having held that the population classification thus far discussed is unconstitutional, we next consider the question of whether or not there remains any portion of the Act which can be held constitutional and applicable to any county in the State of Texas. In determining this question, we have examined the caption of the Act and fail to find any county to which the Act could be said to apply. Specifically, the caption does not mention any county in Texas containing a city with a population of 350,000 or more. Although the question of the sufficiency or insufficiency of the caption is not raised by the parties, it has long been the rule in this State that this Court may adjudicate a statute to be unconstitutional when its unconstitutionality is obvious and apparent, regardless of when or how the question is raised. Gohlman, Lester & Co. v. Whittle et ux., 114 Texas, 548, 273 S.W. 808. See Hopson v. Murphy, 1 Texas 314; Terrell v. Middleton, Texas Civ. App., 187 S.W. 367, writ denied in 108 Texas 14, 191 S.W. 1138, motion for rehearing of application overruled in 108 Texas 14, 193 S.W. 139; Commonwealth of Massachusetts et al. v. Davis, 160 S.W. 2d 543, 551, affirmed in part, reversed in part on other grounds, 140 Texas 398, 168 S.W. 2d 216.

■ The result of our analysis and construction of the caption of the original Act and the caption of the amendment to the Act leads us to hold that no county remains to which the Act can be applicable. It is our opinion that the original Act, being House Bill No. 11, adopted at the Regular Session of the 55th

Legislature, and now designated as Article 271c of Vernon's Annotated Code of Criminal Procedure, is ineffective. The Act, as originally adopted, provided in the caption and in the body of the Act that its purpose was to regulate the business of giving bail bonds in any county having within its boundaries a city with a population of 350,000 inhabitants, according to the last preceding Federal Census. Apparently it was recognized by the Legislature that there being no city in Texas with a population of exactly 350,000 inhabitants, the Act was inoperative. Consequently, at a special session of the 55th Legislature, Senate Bill No. 2 5, amending Article 271c, supra, was introduced and later adopted by both the Senate and the House. The law became effective on December 2, 1957. The caption of the Act, as amended contains no reference to counties containing cities of 350,000 inhabitants *or more,* according to the last preceding Federal Census, although such provision is contained in the body of the Act. The failure to include within the caption of the amended Act a provision that the Act affected counties other than those within the population brackets specifically named therein leaves the Act in effect as it was originally enacted in so far as the population bracket referring to counties containing a city of exactly 350,000 inhabitants is concerned. See Galveston & W. Ry. Co. v. City of Galveston, 96 Texas 520, 74 S.W. 537, 102 A.L.R. 802. We, therefore, have no valid statute regulating the business of giving bail in counties containing cities with a population of 350,000 inhabitants or more. Thus holding, it becomes unnecessary to pass upon the question of whether the Act would have been constitutional had the caption contained a proper provision in regard to a population bracket of 350,000 or more. The purpose of the Act, as stated in Section 14 thereof, is a very laudable one, indeed. However, if we were to hold that without the population restriction, the statute is now applicable to all counties in Texas alike, we would be, in effect, invading the legislative field. This we do not propose to do. Since there remains no county to which the Act can be made applicable, the severability clause, Section 12 of the Act, is rendered inoperative.

In view of our holding on the questions discussed, we deem it to be unnecessary to pass upon the other questions presented.

The judgment of the trial court is reversed and the cause is remanded to that court with instructions to grant the injunction as prayed.

Opinion delivered April 30, 1958.

MR. JUSTICE WALKER, dissenting.

While I agree with the majority that the statute in question is unconstitutional, the record in this case shows that the Sheriff of Dallas County has simply refused to approve an appearance bond. Appellants might be entitled to a writ of mandamus to compel him to do so or a declaratory judgment that the statute is unconstitutional, but their actions for either form of relief were voluntarily dismissed in the trial court. Since they did not allege and there is no evidence to show a threatened direct *invasion* of a vested property right, I fail to see upon what theory the majority now directs the issuance of an *injunction*. See Ex Parte Sterling, 122 Texas 108, 53 S.W. 2d 294. I would affirm the judgment of the trial court denying such relief.

Opinion delivered April 30, 1958.