NO. 07-93-0162-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL D



JULY 27, 1994



______________________




CITY OF LUBBOCK, APPELLANT



V.



CURREY ENTERPRISES, INC., D/B/A 


BUDGET RENT-A-CAR, APPELLEE



______________________



FROM THE 237TH JUDICIAL DISTRICT COURT OF LUBBOCK COUNTY;



NO. 92-540,858; HONORABLE JOHN R. McFALL, JUDGE


______________________




Before REYNOLDS, C.J., and BOYD and POFF, JJ.


 In twenty three points of asserted error, the City of Lubbock (City) challenges a summary
judgment in favor of appellee, Currey Enterprises, Inc., d/b/a Budget Rent-A-Car (Currey),
declaring the City's Off-Airport User Fee ordinance invalid and permanently enjoining enforcement of the ordinance. For reasons hereinafter expressed, we reform the judgment and,
as reformed, affirm it.


 The City owns and operates a municipal airport known as the Lubbock International
Airport. The City leases space in the airport's terminal building to airlines, vendors, and car
rental companies. The lease agreements between the City and the car rental companies provide
for payment of 10% of the company's annual revenue to the City. Until April 1992, appellee
Currey leased space in the airport terminal building for the purpose of conducting its car rental
business. In an effort to resolve an ongoing dispute not relevant to this case, Currey and the City
agreed that Currey could terminate its lease with the airport. Currey began operating its business
from a location off the premises of the airport but continued to pick up and deliver its customers
to and from the airport.


 On August 27, 1992, the City enacted an ordinance regulating airport ground
transportation services, also referred to as the Off-Airport User Fee Ordinance. Pursuant to the
ordinance, any person who "provides ground transportation services (1) to arriving or departing
airline passengers at the Airport for commercial or business purposes" must obtain a permit from
the City. The ordinance also imposes a permit fee and a user fee for the "privilege" of providing
these transportation services.


 The ordinance classifies off-airport operators as either: (1) car and truck rental companies;
(2) commercial shuttle operators and parking facility operators; or (3) hotels and motels. Each
category is governed by a different fee structure. Hotels and motels pay an annual permit fee of
$200. Commercial shuttle operators and parking facility operators pay an annual permit fee of
$50 plus a user fee of $100 per month. Car and truck rental companies pay an annual permit fee
of $50 plus a user fee of nine percent (9%) of gross receipts above the first $25,000 derived from
airport generated business in a year. The ordinance also creates a presumption that ninety percent
(90%) of off-airport car and truck rental companies' business is airport generated and places the
burden on the off-airport operator to prove that a lower percentage of its revenue was airport
generated. (2) In order for an off-airport operator to retain its permit, it must pay the required fees,
maintain records, possess a specified amount of general liability insurance and name the City as
an insured under the policy. (3) Violation of the ordinance is punishable by a fine of up to $200.


 On December 15, 1992, Currey brought suit against the City seeking declaratory relief and
an order enjoining enforcement of the ordinance. In seeking a judgment declaring the ordinance
void, Currey contended that the ordinance imposed an occupation tax in violation of Article VIII,
section 1(c) of the Texas Constitution and violated the equal protection provisions of Article I,
section 3 of the Texas Constitution. On March 25, 1993, the trial court granted Currey the
summary judgment giving rise to this appeal.


 The record reveals that the trial court concluded the user fee sought to be imposed by the
ordinance was an occupation tax on the mechanical pursuit of renting cars and that the attempt to
levy the tax was in violation of Article VIII, section 1(c) of the Texas Constitution. It further
concluded that the City was also prohibited from imposing such a tax because the state had not
levied an occupational tax on car rental businesses.


 In reviewing the propriety of this summary judgment, we must apply the standards for
appellate review of such judgments as set out by the Texas Supreme Court in Nixon v. Mr.
Property Management Company, 690 S.W.2d 546 (Tex. 1985). Those standards are:


 1. The movant has the burden of showing that there is no genuine issue of material
fact and that it is entitled to judgment as a matter of law;


 2. In deciding whether there is a disputed material fact issue, evidence favorable
to the non-movant will be taken as true;


 3. Every reasonable inference must be indulged in favor of the non-movant and
any doubts resolved in its favor.


Id. at 549.


 Additionally, where the constitutionality of a statute is challenged, it must be presumed
that the legislative body did not intend to enact an unconstitutional statute. Vinson v. Burgess, 773
S.W.2d 263, 266 (Tex. 1989). This presumption has also been applied to ordinances. See City
of Fort Worth v. Gulf Refining Co., 125 Tex. 512, 83 S.W.2d 610, 617 (1935).


 Initially, we must address the City's contention that the district court, acting as a court of
equity, was without jurisdiction to enjoin enforcement of the ordinance because the ordinance is
penal in nature. The Texas Supreme Court recently reaffirmed the well established rule that, with
a limited exception, a court of equity has no jurisdiction to enjoin enforcement of a criminal
statute or ordinance. State v. Morales, 37 Tex. Sup. Ct. J. 390 (January 12, 1994). The
exception to the rule allows a court of equity to enjoin enforcement of a penal statute or ordinance
if the statute or ordinance is unconstitutional or otherwise void and its enforcement threatens
irreparable injury to property rights. In this suit, in addition to challenging the constitutionality
of the ordinance, Currey argues that the ordinance threatens its right to continue to earn a living
which, it argues, is a property right entitled to constitutional protection. Indeed, in Smith v.
Decker, 158 Tex. 416, 312 S.W.2d 632 (1958), our supreme court held that "the right to earn a
living is a property right within the meaning of our Constitution. . . ." Id. at 633. See also Font
v. Carr, 867 S.W.2d 873, 875 (Tex.App.--Houston [1st Dist.] 1993, no writ); Majestic
Industries, Inc. v. St. Clair, 537 S.W.2d 297, 300 (Tex.Civ.App.--Austin 1976, writ ref'd
n.r.e.).


 We are aware of our sister court's decision in Bellew v. City of Houston, 456 S.W.2d 185
(Tex.Civ.App.--Houston [1st Dist.] 1970, writ ref'd n.r.e.) concerning an ordinance prohibiting
taxicab operators from picking up passengers at a certain airport unless they entered into an airport
concession contract with the City. Id. at 186. The appellant, a taxicab operator, alleged that the
ordinance prohibited him "from earning money" from passengers leaving the airport because he
did not have a contract with the City. In affirming the trial court's dismissal of the suit for lack
of jurisdiction, the appellate court noted that no person has a vested right to use public streets and
highways for carrying on a business and that the City of Houston was authorized to enter into
contracts to supply services at the airport under article 46d-4 of the Texas Revised Civil Statutes
Annotated. Id. at 187. The question before this court, however, is whether a user fee, based
upon a percentage of gross receipts from airport generated business, amounts to an occupation tax
rather than a fee as consideration for a contract granting the exclusive right to obtain customers
from airport premises such as that involved in the Bellew case.


 If the ordinance in question is an occupation tax based on the revenues of Currey's
business, it affects the right to earn a living, a right the Smith court found to be sufficient to enjoin
a penal statute. Smith, 312 S.W.2d at 633. To satisfy this prong of the test for enjoining a penal
ordinance, the plaintiff is not obligated to show that irreparable injury has actually occurred;
rather, it need only show that such injury is threatened. We find that Currey has met this burden.


 There is an additional reason why the City's position is not completely persuasive. A
reading of the ordinance reveals that it contains both criminal and civil provisions. Those
provisions of the ordinance requiring off-airport operators to obtain a permit from the City and
meet particular requirements are clearly within the City's police power to protect the health,
safety, and welfare of its citizens. However, those provisions concerning the user fee of nine
percent (9%) of gross revenues are civil in nature and would be recoverable only through a civil
proceeding. See e.g., City of Corpus Christi v. McClaugherty, 284 S.W.2d 927 (Tex.Civ.App.--San Antonio 1955, writ ref'd). Any civil proceeding to recover payments due under a city
ordinance or to revoke a permit for failure to pay user fees required by an ordinance is subject to
the injunction power of an equity court. Payne v. Massey, 145 Tex. 237, 196 S.W.2d 493, 496
(1946); Cabell's Inc. v. City of Nacogdoches, 288 S.W.2d 154, 160 (Tex.Civ.App.--Beaumont
1956, writ ref'd n.r.e.); ABC Storage & Moving Co. v. City of Houston, 269 S.W. 882, 886
(Tex.Civ.App.--Galveston 1925, writ ref'd). The City's eleventh, thirteenth and fourteenth points
are overruled.


 Currey must also show that the ordinance sought to be enjoined is unconstitutional or
otherwise void. Morales, 37 Tex. Sup. Ct. J. at 391. In its first, fourth, fifth, sixth, seventh,
and eighth points of error, the City challenges the trial court finding that the ordinance is an
unconstitutional occupation tax rather than a valid user fee. That is the pivotal question presented
by this appeal.


 In determining that question we must first consider the City's argument that, by statute,
it is expressly authorized to enact such an ordinance. In support of that position, the City relies
upon several provisions of the Municipal Airport Act, Tex. Rev. Civ. Stat. Ann. art. 46d-1 to 
-22 (Vernon 1969 & Supp. 1994) (the Act).


 Article 46d-2 of the Act authorizes a city to construct and operate airports. Article 46d-7
specifically authorizes the adoption of "reasonable ordinances, resolutions, rules, regulations and
orders" for governance of airports operated by a city. Article 46d-4 authorizes cities to "enter into
contracts, leases and other arrangements" for the use or improvement of the airport or to provide
goods or services at the airport. Additionally, the City cites Article 1175(3) of the Texas Revised
Civil Statutes Annotated (Vernon Supp. 1994), contending that, as a home-rule city, it has
"exclusive dominion, control, and jurisdiction" over the city's streets and grounds.


 Relying on these statutory provisions, the City argues that it has exclusive dominion and
control over the airport, including the power to impose fees for the "privilege" of providing
services at the airport. We believe that the City misconstrues the effect of these statutes on the
circumstances of this case. For example, Article 46d-4 grants the City the authority to enter into
"contracts, leases, and other arrangements" with others who commercially use, improve, or
provide goods or services to the airport. Several cases cited by the City illustrate the actual effect
of this statute. In Bellew, the City of Houston entered into a contract with a cab company
whereby the company was granted the exclusive right to pick up passengers at a certain airport. 
Referring to the City's article 46d-4 authority to enter into such a contract, the court affirmed the
trial court's dismissal of the action. Bellew, 456 S.W.2d at 187. The City also cites Woolen v.
Surtran Taxicabs, Inc., 801 F.2d 159 (5th Cir. 1986); Independent Taxicab Driver's Employees
v. Greater Houston Transportation Co., 760 F.2d 607 (5th Cir. 1985); and Continental Bus
System v. City of Dallas, 386 F.Supp. 359 (N.D.Tex. 1974); however, these cases also involved
contracts granting exclusive franchises pursuant to Article 46d-4. (4) In the absence of such a
contract, lease, or other arrangement, Article 46d-4 has no applicability.


 In contrast, the ordinance at issue here is applicable to Currey because it does not have a
contract or lease with the City. The ordinance itself recites that it applies to any off-airport
operator who is not a party to a lease or concession agreement with the City. Clearly, the
regulatory control the City seeks to impose upon Currey is not the type of "other arrangement"
contemplated by Article 46d-4, nor has the City granted an exclusive franchise to another as was
the case in Woolen, Independent Taxicab Driver's, and Continental Bus System. As there is no
contract, lease or other arrangement involved in this case, Article 46d-4 is inapplicable. We must,
therefore, overrule the City's fifteenth and sixteenth points in which it contends that the trial court
should have found the ordinance was authorized by Article 46d-4.


 The City's reliance on the language of Article 1175, that the City have "exclusive
dominion, control, and jurisdiction in, over and under the public streets," is also misplaced. The
inapplicability of the article is illustrated by the existence of Article 6698 of the Texas Revised
Civil Statutes Annotated (Vernon 1977), and the manner in which it was construed in City of
Corpus Christi v. McClaugherty, 284 S.W.2d at 927. Article 6698 authorizes municipalities to
charge a permit fee or street rental fee not to exceed two percent (2%) of gross receipts on "motor
vehicles transporting passengers for hire." In McClaugherty, the San Antonio Court of Civil
Appeals found that the above quoted language was not sufficiently broad to authorize a city to
charge such a fee to a car rental company. Id. at 928. Although Article 1175 has undergone
significant changes from the time McClaugherty was decided, the language relied upon by the City
has existed unchanged since the statute's inception in 1913. (5)


 The legislature, implicitly aware of the provisions of Article 1175, obviously felt that it
was necessary to explicitly authorize municipalities to charge those businesses transporting
passengers for hire a user fee of up to two percent of their gross receipts. In doing so, the
legislature must have felt that such authority did not exist in the municipality's "exclusive
dominion, control and jurisdiction" of the public streets. To view Article 1175 otherwise would
render Article 6698 meaningless. The legislature will not be presumed to do a useless thing. 
Grunsfeld v. State, 843 S.W.2d 521, 544 (Tex.Crim.App. 1992); Barfield v. City of La Porte,
849 S.W.2d 842, 845 (Tex.App.--Texarkana 1993, writ granted). We thus overrule the City's
tenth point asserting that the trial court erred in concluding the provisions of Article 1175 were
not sufficiently broad to authorize the ordinance.


 The City also cites section 2210(a)(9) of the Title 49 appendix of the United States Code
as authorizing the passage of the ordinance. Again, we disagree. This section concerns conditions
imposed on the approval of federal airport development grants. The provision the City relies upon
provides that the recipient must promise to "maintain a fee and rental structure for the facilities
and services . . . which will make the airport as self-sustaining as possible under the circumstances
existing at that particular airport." 49 App. U.S.C. § 2210(a)(9) (1988). (6) Section 2210(a)
requires that the Secretary of Transportation "receive assurances, in writing" that the airport
operator will comply with, inter alia, Section 2201(a)(9) concerning airport fees and rental
charges. Id. If the fee sought to be imposed by the airport operator is violative of the state
constitution or is otherwise void, it cannot be imposed and, thus, cannot be counted among
possible fee and rental structures to make the airport self sustaining. This section imposes
obligations on the Secretary of Transportation in approving airport development projects. It does
not present a federal supremacy override of an airport operator's determination of allowable fees
and rentals. Thus, the City's seventeenth point of error contending that the trial court erred in not
concluding that the section authorized the passage of the ordinance is overruled.


 In support of its position that the fees imposed by the ordinance at issue are impermissible,
Currey relies upon Article VIII, section 1(c) and (f) of the Texas Constitution. Section 1(c)
prohibits occupation taxes on mechanical pursuits while section 1(f) prohibits a city from imposing
an occupation tax greater than one-half that imposed by the state on a given occupation.


 Under Texas law, the name given a fee imposed by a legislative body is not determinative
of whether the charge is a user fee or a tax, H. Rouw Co. v. Texas Citrus Comm'n, 151 Tex. 182,
247 S.W.2d 231, 234 (1952); Prudential Health Care Plan v. Comm'r of Insurance, 626 S.W.2d
822, 829 (Tex.App.--Austin 1981, writ ref'd n.r.e.); rather, the inquiry is whether the primary
purpose of the charge is regulation, or the subsidization of the cost of regulation, or whether the
charge is imposed to raise money for public purposes, Conlen Grain and Mercantile, Inc. v. Texas
Grain Sorghum Producers Board, 519 S.W.2d 620, 623 (Tex. 1975). This test has been
consistently used to distinguish user or license fees from taxes. E.g., id.; Robinson v. Hill, 507
S.W.2d 521, 526 (Tex. 1974); H. Rouw Co., 247 S.W.2d at 234; Hurt v. Cooper, 130 Tex. 433,
110 S.W.2d 896, 899 (1937); Creedmoor Maha Water Supply Corp. v. Barton Springs-Edwards
Aquifer Conservation Dist., 784 S.W.2d 79, 81-82 (Tex.App.--Austin 1989, writ denied);
Prudential Health Care Plan, 626 S.W.2d at 829; Boyd R. Laughlin, Taxation-License Fee-Occupation Tax-Distinction, 14 Tex. L. Rev. 278 (1936). The primary purpose of a statute is to
be determined from a consideration of the statute itself as a whole, H. Rouw Co., 247 S.W.2d at
234.


 If the fees sought to be charged by the City are taxes, their imposition on a particular
occupation would necessarily make the taxes occupation taxes. Conlen, 519 S.W.2d at 623. 
Article VIII, section 1(f) prohibits a city or county from levying a tax on an occupation that is not
taxed by the state. City of Fort Worth v. Gulf Refining Co., 125 Tex. 512, 83 S.W.2d 610, 617
(1935); Hoefling v. City of San Antonio, 85 Tex. 228, 20 S.W. 85, 88-89 (1892).


 The propriety of the trial court's ruling is necessarily dependent upon the summary
judgment evidence that was before the court; therefore, we must now address the City's twenty-first point. In that point, the City contends that "the trial court erred in using as summary
judgment evidence, findings of fact which the court prepared" for the City's appeal of the
temporary injunction the court had issued in the case. Disposition of that point requires us to
determine what summary judgment evidence was properly before the trial court.


 Currey offered as summary judgment evidence the affidavit of its attorney and an affidavit
of Leslie Currey, the president of Currey Enterprises. Currey's motion for summary judgment
also directed the trial court to the findings of fact filed by the court after it issued the temporary
injunction. Additionally, the motion refers the court to the ordinance itself, a certified copy of
the ordinance being attached to the brief in support of the motion for summary judgment.


 We agree with the City that findings of fact entered in a temporary injunction proceeding
are not competent summary judgment evidence and may not be considered in determining a
movant's right to summary judgment. Rule 166a contemplates several types of evidence that may
be used in support of a motion for summary judgment including affidavits, depositions,
interrogatory answers, other discovery responses, and authenticated or certified public records. 
Tex. R. Civ. P. 166a(c). Additionally, the evidence must be offered in a form that would be
admissible at a trial on the merits. Brownlee v. Brownlee, 665 S.W.2d 111, 112 (Tex. 1984);
Tex. R. Civ. P. 166a(f).


 Even if we consider the findings as an authenticated public record, we can find no theory
under which a trial court's findings of fact filed in a prior temporary injunction proceeding could
be admissible as evidence at a later trial on the merits. Therefore, we hold the findings of fact
offered by Currey in its motion for summary judgment are not competent summary judgment
evidence and may not be considered in our review to determine the propriety of the summary
judgment.


 However, we are not persuaded by the City's assertion that the trial court relied on the
findings in granting the summary judgment. Currey's offer of incompetent summary judgment
evidence did not require that it be relied upon, or even considered, by the trial court. If there is
sufficient competent evidence in the record to support the judgment, the trial court did not err in
rendering its judgment and the City's point must fail. The findings tendered by Currey are:


 1. On or about August 27, 1992, Defendant CITY OF LUBBOCK, enacted an
ordinance requiring the payment of fees by off-airport car rental companies.


 2. The State of Texas does not impose an occupation tax on car rental companies.


 3. The ordinance requires payment by Currey of nine percent (9%) of gross
receipts over $25,000 from airport business. 


 4. Car rental companies are engaged in mechanical pursuits. Currey is engaged
in the car rental business.


We will address each finding seriatim.


 Currey attached a certified copy of the City's ordinance to its brief in support of its motion
for summary judgment and requested, in its brief, that the trial court take judicial notice of the
ordinance as permitted by Rule 204 of the Texas Rules of Civil Evidence. As the request was in
a brief rather than by motion, the court was not required to take the requested judicial notice;
however, the rule allows the court to take notice of the ordinance on its own motion. Id. The
court was not required to state, on the record, that it took judicial notice of the ordinance. See
Keene Corp. v. Rogers, 863 S.W.2d 168, 175 (Tex.App.--Texarkana 1993, no writ). 
Additionally, as the ordinance was a legislative matter, the requirements for judicial notice of
adjudicative facts provided by Rule 201(e) of the Texas Rules of Civil Evidence was not
applicable. Olin G. Wellborn III, Judicial Notice Under Article II of the Texas Rules of Evidence,
19 St. Mary's L.J. 1, 11 (1987). Therefore, the ordinance was properly before the trial court,
thereby making the first and third findings offered by Currey irrelevant. (7)


 The second finding Currey offered as summary judgment evidence was the court's finding
that the State of Texas does not impose an occupation tax on car rental companies. Currey also
attached the affidavit of its attorney, J. Edwin Price, stating that he had researched the issue and
determined that the State of Texas does not impose such a tax. Even without considering this
evidence, the court could have taken judicial notice that the state does not impose an occupation
tax on car rental companies because no evidence is necessary to establish the content of state law. 
Indeed, a trial court is required to take judicial notice of the public statutes of this state. Kish v.
Van Note, 692 S.W.2d 463, 467 (Tex. 1985).


 The fourth finding in question determined that car rental companies are engaged in
mechanical pursuits and that Currey is engaged in the car rental business. However, evidence of
these matters was submitted in proper summary judgment form through Leslie Currey's affidavit.


 As there was sufficient evidence properly before the court to support a finding on each of
the issues for which improper evidence was submitted, we find that the evidence improperly
submitted does not require a reversal. We overrule the City's twenty-first point.


 Currey argues that the challenged ordinance is a tax because its primary purpose is to raise
revenue. Conlen, 519 S.W.2d at 623. In support of that contention, Currey points to the
introductory findings contained in the ordinance itself. These findings include statements that:


 1. "[T]he Airport primarily relies on grants, rentals, fees, and charges from
Airport operations to finance its development and pay for its operating costs;"


 2. "[O]n-airport operators paid the City reasonable rentals, fees, and other charges
for the privilege of using the Airport, which collectively resulted in substantial
revenue for the Airport . . . ."


 3. "[T]hat because of the disparity between the benefit many off-airport operators
receive from their use of Airport facilities and the absence of any appreciable
contribution to the operating costs, improvement, and development of the Airport
by such off-airport operators, the City is being deprived of revenues which could
be applied to maintaining and improving the Airport . . . this disparity may
encourage on-airport operators to become off-airport operators and thereby deprive
the Airport of additional revenues that are anticipated and needed in the future;" 


 4. "[I]n order to . . . protect established sources of revenue to the Airport, to
maximize revenue to the Airport, to help defray the cost of construction,
improvement, operation, and maintenance of the Airport, to pay for service and
retirement of Airport debts . . . it is necessary and appropriate to enact an
Ordinance regulating and requiring reasonable user fees . . . ."


(emphasis added). Currey further contends that the tax created by the ordinance is an occupation
tax because the ordinance is directed at particular occupations. Id. at 624.


 In response, the City argues that the summary judgment evidence, at best, demonstrates
that a material question of fact exists regarding the primary purpose of the fees authorized by the
ordinance. In support of that position, the City presents two theories. First, the revenue
generated by the off-airport user fee provides only a small percentage of the airport's operating
expenses and, second, the fee serves the City's legitimate regulatory authority.


 To support its contention, the City offers the affidavits of Bern Case (Case), the Director
of Aviation at Lubbock International Airport, and Joe Horkey (Horkey), the Chairman of the
Airport Board at the time the ordinance was adopted. Both affiants aver that the ordinance was
enacted to remove the incentive for on-airport users to move off-airport. In his affidavit, Case
states that the City expects the ordinance to generate approximately $30,000, that revenues from
on-airport users total $438,000, and that operating expenses for the airport total $13,800,000.


 The cases distinguishing fees from taxes can be broadly divided into those dealing with
license fees and those dealing with user fees. License fees are imposed for the granting of a
license or permit to engage in a particular activity. Robinson v. Hill, 507 S.W.2d 521, 526 (Tex.
1974); Prudential Health Care Plan v. Commissioner of Insurance, 626 S.W.2d at 828. The
revenue derived from a license fee may be used to offset the cost of issuing the license or permit
and to regulate those engaged in the licensed or permitted activity. Prudential Health Care Plan,
626 S.W.2d at 829.


 User fees impose charges on those making use of some resource. Revenues derived from
user fees may be used for the purpose of offsetting the cost of providing the resource, Rainey v.
Malone, 141 S.W.2d 713, 717 (Tex.Civ.App.--Austin 1940, no writ), or as an economic
disincentive for use of that resource, Creedmoor Maha Water Supply Corp. v. Barton Springs-Edwards Aquifer Conservation Dist., 784 S.W.2d at 82; Beckendorff v. Harris-Galveston Coastal
Subsidence Dist., 558 S.W.2d 75, 80 (Tex.App--Houston [14th Dist.] 1977), writ ref'd n.r.e.,
563 S.W.2d 239 (Tex. 1978). The ordinance at issue in the instant case involves both types of
charges.


 A reading of Currey's pleadings, motions and supporting briefs reveal that it did not
challenge the City's power to exercise regulation over the businesses covered by the ordinance. 
Likewise, it did not challenge the constitutionality of the annual permit fee of $50. The annual
permit fee imposed by the ordinance is consistent with license fees upheld by our supreme court. 
See, e.g., Robinson, 507 S.W.2d at 526 ($500 initial fee and $250 renewal fee for bail bondsman
license upheld). We hold that Currey failed to establish, as a matter of law, that the provisions
of the ordinance requiring off-airport operators to obtain permits from the City and pay an annual
permit fee are in violation of the Constitutional provisions on which it relies. As the City's
ordinance contained a severability clause, the trial court erred in enjoining this portion of the
ordinance.


 The City's ordinance also imposes what it terms a user fee. In Section 5-55a of the
ordinance, two levels of fees are imposed in addition to the annual permit fee. For "commercial
shuttle operators and parking facility owners" this section imposes a flat fee of $100 per month. 
For "car and truck rental companies" the fee is nine percent of gross receipts from airport
generated business above $25,000 in any year. It is, of course, the constitutionality of this fee
which is the focus of Currey's challenge.


 We initially reject the City's argument that the fee is voluntary. The City's position is that
Currey could choose to avoid the fee by obtaining customers from sources other than the airport. 
This position must be rejected as a purely theoretical possibility. Given the nature of the car rental
business, as recognized by the ordinance's presumption that 90% of the business of an off-airport
car rental company's business is airport-generated, the decision to obtain business from the City's
airport cannot be considered a voluntary choice.


 In Conlen Grain and Mercantile, Inc. v. Texas Grain Sorghum Producers Board, 519
S.W.2d at 620, the Grain Sorghum Producers Board, a state agency, imposed an assessment on
grain sorghum to be collected by the grain sorghum processors. The Texas Supreme Court found
the assessment to be a tax despite provisions allowing the producer to recover the assessment paid. 
Id. at 623. The statute authorizing the assessment by the Board (8) only provided for collection by
"processors." (9) Because the definition of processors was limited to "persons within this state," (10)
the statute did not prevent producers from avoiding the assessment by selling grain sorghum to
processors in other states. Even so, this possibility did not prevent the supreme court from finding
that the assessment was an "enforced contribution of money" rather than a voluntary payment. 
Id. at 623. The fee in question here is no more voluntary than was the assessment imposed in
Conlen.


 In challenging Currey's argument, the City relies on cases discussing privilege fees
imposed to offset the cost of providing a benefit to the user, as well as cases discussing user fees
imposed for the purpose of regulation or as an economic disincentive. The City cites Rainey v.
Malone, 141 S.W.2d 713 (Tex.Civ.App.--Austin 1940, no writ), in support of its position that
the user fee imposed by the ordinance is justified by the benefits Currey receives "in a manner not
shared by the general public." In Rainey, a student of the University of Texas challenged a $1
student union fee imposed on all students by the university. Id. at 714. According to the enabling
statute, use of the revenue generated by this fee was:


 for the sole purpose of operating, maintaining and improving the Texas Union;
provided, however, that the amount of this fee may be changed at any time by the
Board of Regents within the limits hereinbefore fixed in order that sufficient funds
to support the Union may be raised and yet insuring that no surplus, other than the
customary reserves, shall ever be accumulated.


Id. at 717. Because the revenue generated by this fee was to be placed in a "Student Union Fee
Account" and used exclusively for operation and improvement of the student union, the court held
that it was a "privilege" or user fee. Id.


 In contrast, revenues raised by the fee imposed by the City's ordinance are, by its own
terms, used to pay the general operating expenses of the entire airport instead of limiting the
application of the funds to only those facilities used by off-airport operators. The fact that the
facilities used by Currey and the other off-airport operators would not exist but for the overall
operation of the airport presents no distinction from the fact in Rainey that the student union would
not have existed but for the operation of the entire university. In sum, the fee in question here
is not a "privilege fee" of the type approved in Rainey.


 The City also cites several cases from federal courts (11) and a sister state (12) where similar fees
have been upheld based, in part, on findings that the user benefited from the existence of the
entire airport and not just the use of the airport's roadways. However, each of the federal cases
cited by the City involved challenges to fees on the basis that they were violative of the Commerce
Clause of the United States Constitution. (13) To determine whether a fee violates the Commerce
Clause, courts apply the "fair approximation of use" test. (14) Under this test, courts determine
whether a fee places an impermissible burden on interstate commerce by considering the
relationship between the fee imposed and the benefit received. For example, the court in Alamo
considered the cost of operating the entire airport in determining the reasonableness of the fees
in relationship to the costs incurred in operating the airport. Alamo, 906 F.2d at 521.


 A fee whose primary purpose is clearly to raise revenue could easily meet the fair
approximation of use test and thus be acceptable under the federal constitution's commerce clause. 
Therefore, the federal cases cited by the City provide no guidance for us in applying the Conlen
test to determine whether a fee is a user fee or amounts to a revenue producing tax under state
law.


 Based on its summary judgment evidence that the revenue generated by the ordinance is
expected to produce only 0.216% of the operating expense of the airport, the City argues that the
fee's primary purpose cannot be to raise revenue. We disagree.


 The correlation between the amount of revenue generated and total expenditures is not
probative of the purpose of a legislatively imposed fee. For example, it cannot be questioned that
an occupation tax, such as the $200 annual occupation tax imposed on attorneys, (15) is imposed for
the purpose of raising revenue. The fact that revenue from the tax may provide only 0.0314%
of the state's operating expenses does not alter its character as revenue raising. (16)


 For these reasons, we overrule the City's fourth point in which it contends that the trial
court erred in finding that the user fee was a tax because there was insufficient evidence
concerning the cost of regulating off-airport operators.


 Next, we must decide if the ordinance's user fee has a regulatory justification. The City
relies on Creedmoor, 784 S.W.2d at 79, and Beckendorff, 558 S.W.2d at 75, to support its
position that the ordinance has a regulatory justification. Both of these cases involved challenges
to user fees for the withdrawal of groundwater. In determining that the fees were not improper
taxes, the Creedmoor and Beckendorff courts found that the fees imposed economic disincentives
to the use of natural resources and, as such, were primarily regulatory in purpose. The revenue
raised was merely a byproduct of the fee's primary purpose. Creedmoor, 784 S.W.2d at 82;
Beckendorff, 558 S.W.2d at 80.


 In considering those cases, it must be noted that the agencies seeking to impose the charges
in Creedmoor and Beckendorff were charged with the responsibility of ensuring the "conservation,
preservation, protection, recharging, [and] prevention of waste of the underground water,"
Creedmoor, 784 S.W.2d at 80-81, and to "provide for the regulation of the withdrawal of
groundwater within the boundaries of the district for the purpose of ending subsidence,"
Beckendorff, 558 S.W.2d at 78. The imposition of economic disincentives for withdrawing
groundwater clearly and directly served the regulatory purpose with which the agencies were
charged.


 The City argues that the primary purpose of the user fee is to regulate, rather than to raise
revenue, because the fee removes the economic incentive that businesses renting space at the
airport might otherwise have if they moved off of the airport. We cannot agree that this is a
regulatory power within the scope of the powers conferred upon the City by the Municipal
Airports Act.


 The imposition of an economic disincentive to prevent a particular type of business from
being conducted off, as opposed to on, the City's airport property does not regulate airport
activities. Rather, the disincentive infringes upon the ability of a business to choose not to enter
into a contract with the City. We do not believe that the City's authority to enter into contracts, (17)
even exclusive contracts, for the provision of services at the airport, includes the power to coerce
those who have contracted, or might contract, with the City into maintaining, or entering into,
such contracts.


 Having found that the fees sought to be collected by the City cannot be justified as a
privilege fee for the use of the airport's roadways or as a regulatory measure, we are forced to
conclude that the summary judgment evidence establishes, as a matter of law, that the primary
purpose of the fee is to produce revenue. Based on this conclusion, under the longstanding rule
in Texas, we must find, as did the trial court, that the City's ordinance imposes a tax. As the tax
is only imposed on those engaged in a particular occupation, the tax is necessarily an occupation
tax, Conlen, 519 S.W.2d at 624, and, as such, is in direct conflict with Article VIII, section 1(f)
of the Texas Constitution. Therefore, the user fee provisions of the City's ordinance are void. 
Hoefling v. City of San Antonio, 85 Tex. 228, 20 S.W. 85, 88-89 (1892). Having shown the trial
court that the user fee provisions of the ordinance were void and that enforcement of the
provisions threatened a property right, Currey was entitled to the judgment declaring the user fee
provisions of the ordinance void and enjoining the collection of those fees. The City's first point
is overruled in part. The City's second, third, fifth, sixth, and seventh points of error are
overruled.


 Our holding that the user fee provisions of the ordinance are void as violative of the Texas
Constitution obviates any discussion of the City's eighth and twenty-second points challenging the
trial court's ruling that the fee was an unconstitutional attempt to levy an occupational tax upon
a mechanical pursuit.


 In its twenty-third point, the City asserts that the trial court erred in awarding Currey
attorney's fees. The propriety of an award of attorney's fee against a governmental entity in a
declaratory judgment action is unsettled. Several cases have held that attorney's fees may be
awarded in such cases only when the defense of sovereign immunity has not been raised. Waugh
v. City of Dallas, 814 S.W.2d 492, 497 (Tex.App.--Dallas 1991, writ denied); Rodeheaver v.
Steigerwald, 807 S.W.2d 790, 793 (Tex.App.--Houston [14th Dist.] 1991, writ denied), cert.
denied, ___ U.S.___, 112 S.Ct. 1167, 117 L.Ed.2d 414 (1992); Bullock v. Regular Veterans
Assoc. No. 76, 806 S.W.2d 311, 315 (Tex.App.--Austin 1991, no writ); Falls County v. Perkins
and Cullum, 798 S.W.2d 868, 872 (Tex.App.--Fort Worth 1990, no writ). Other cases have held
that a governmental unit may be liable for attorney's fees in a declaratory judgment action without
stating whether or not the defense of sovereign immunity had been invoked. Duncan v. Pogue,
759 S.W.2d 435, 435-36 (Tex. 1988); Hooten v. Enriquez, 863 S.W.2d 522, 533 (Tex.App.--El
Paso 1993, no writ). Here, the City clearly raised the defense of sovereign immunity in its
original answer. That being so, we are squarely presented with the question of whether attorney's
fees may be awarded against a municipality in an action brought under the Uniform Declaratory
Judgments Act (18) (the Act).


 City of El Paso v. Croom Const. Co., 864 S.W.2d 153 (Tex.App.--El Paso 1993, no writ),
is the only case we have found in which a similar question was expressly presented and decided. 
In that case, the majority concluded that attorney's fees may be awarded against a municipality
in a declaratory judgment action. Croom, 864 S.W.2d at 155. En route to its decision, the court
noted that the Act applies to "persons" defined as follows:


 In this chapter, 'person' means an individual, partnership, joint-stock company,
unincorporated association or society, or municipal or other corporation of any
character. (emphasis added).


Id. at 154-55 (citing Tex. Civ. Prac. & Rem. Code Ann. § 37.001 (Vernon 1986)).


 We join with the El Paso Court of Appeals in concluding that the Act clearly waives
immunity for municipalities in actions seeking declaratory judgments and, indeed, requires their
joinder in any action involving the validity of a municipal ordinance. See Tex. Civ. Prac. &
Rem. Code Ann. §§ 37.004, 37.006 (Vernon 1986).


 Section 37.009 of the Act provides that, "In any proceeding under this chapter, the court
may award costs and reasonable and necessary attorney's fees as are equitable and just." Id. §
37.009. As did the El Paso court, we find the legislature expressly included municipal
corporations within the full ambit of the Act. Indeed, there is nothing in the Act indicating any
legislative intent to exempt municipalities from the section authorizing the award of attorney's fees
and costs. Accordingly, we overrule the City's twenty-third point.


 Finally, the remainder of the City's points fail to meet the minimum requisites of Rule
74(f) of the Texas Rules of Appellate Procedure. The City fails to cite any authority or present
any argument of more than one sentence in its ninth, twelfth, nineteenth, and twentieth points of
error. The eighteenth point contains a two-sentence argument. Failure to cite authority or discuss
the facts requisite to maintain a point of error waives the point. New York Underwriters Ins. v.
State Farm, 856 S.W.2d 194, 204 (Tex.App.--Dallas 1993, no writ); Board of Comm. of Beaver
County v. Amarillo Hospital Dist., 835 S.W.2d 115, 122-23 (Tex.App.--Amarillo 1992, no writ). 
Consequently, we need not address these points.


 In conclusion, we hold that the trial court erred in declaring invalid and enjoining the
enforcement of those provisions of the off-airport user fee ordinance requiring permits and
payment of the annual fees for those permits. However, the trial court did not err in declaring
invalid the user fee provisions of the ordinance and enjoining the City from seeking to recover
those fees. Nor did it err in awarding attorney's fees to Currey.


 Accordingly, the judgment of the trial court is reformed to delete that portion declaring
invalid and enjoining enforcement of those portions of the ordinance requiring off-airport
operators to obtain permits and to pay an annual fee for such permits. Tex. R. App. P. 80(b). 
As reformed, the judgment is affirmed.


 John T. Boyd

 Justice


Do not publish.
1. Ground transportation services are defined by the ordinance as "[c]arrying, delivering, or
transporting passengers, customers, baggage, cargo, freight, or mail for consideration or as a
courtesy to or from an off-airport operator's place of business."
2. The ordinance offers no specific mechanism for meeting this burden or for further review if
the City and operator do not agree on the percentage of airport generated business.
3. The record does not reflect if this requirement is placed on those who rent space at the
airport.
4. Each of those cases arose in the context of claimed violations of federal antitrust law. 
5. Acts of April 7, 1913, 33rd Leg., 1913 Tex. Gen. Laws 307.
6. The City has notably ignored the first condition imposed on recipients of airport development
grants, i.e., that "the airport to which the project relates [] be available for public use on fair and
reasonable terms without unjust discrimination. . . ." 49 App. U.S.C. § 2210(a)(1) (1988).
7. The City complains of Currey's offering the first finding as summary judgment evidence even
though an identical statement is contained in an affidavit filed by the City as summary judgment
evidence.
8. Act of June 12, 1967, 60th Leg., R.S., ch. 462, 1967 Tex. Gen. Laws 1052 (repealed 1981).
9. Id. § 15.
10. Id. § 2(4).
11. Alamo Rent-A-Car, Inc. v. City of Palm Springs, 955 F.2d 30 (9th Cir. 1991)(per curiam);
Alamo Rent-A-Car, Inc. v. Sarasota-Manatee Airport Auth., 906 F.2d 516 (11th Cir. 1990), cert.
denied, 498 U.S. 1120, 111 S.Ct. 1073, 112 L.Ed.2d 1179 (1991); Toye Bros. Yellow Cab Co.
v. Irby, 437 F.2d 806 (5th Cir. 1971); Airline Car Rental, Inc. v. Shreveport Airport Auth., 667
F.Supp. 303 (W.D. La. 1987). Not cited by the City, but relevant to our discussion is Evansville-Vanderburgh Airport Auth. Dist. v. Delta Airlines, 405 U.S. 707, 92 S.Ct. 1349, 31 L.Ed.2d 620
(1972).
12. Jacksonville Port Authority v. Alamo Rent-A-Car, Inc., 600 So.2d 1159 (Fla.Dist.Ct.App.
1992). 
13. U.S. Const. art. I, § 8, cl. 3. In Jacksonville Port Authority, the Florida appellate court
misapplied the reasoning of the cases discussing the commerce clause to determine the status of
a fee. In apparent reliance on the analysis made in Jacksonville Port Authority, the City contends
that the difference between taxes and user fees is defined in Commonwealth Edison Co. v.
Montana, 453 U.S. 609, 101 S.Ct. 2946, 69 L.Ed.2d 884 (1981). This is an inaccurate reading
of that case. The Court in Commonwealth Edison did not discuss whether the charge was a user
fee or a tax, rather, it accepted the Montana Supreme Court's characterization of the charge as a
tax and explicitly "put to one side" those cases reviewing challenges to user fees. Id. at 621.
14. The United States Supreme Court set out this test in Evansville-Vanderburg Airport Auth.,
498 U.S. at 716-17.
15. Tex. Tax Code Ann. § 191.142 (Vernon 1992).
16. This value is calculated assuming that all 55,000 of the state's licensed attorneys are liable
for the tax (55,000 x $200 = $11,000,000). Dividing the revenue raised, $11 million, by one
half of the state's $70 billion biennial budget, Legislative Budget Board, Fiscal Size Up, 1994-95
Biennium, or $35 billion, results in the figure of 0.000314, or 0.0314 percent.

17. As conferred upon the City by Article 46d-4 of the Municipal Airports Act.
18. Tex. Civ. Prac. & Rem. Code §§ 37.001-.011 (Vernon 1986).